**Peter J. PALLOTTA, Defendant, Appellant,**

v.

**UNITED STATES of America, Plaintiff, Appellee.**

**No. 7090.**

United States Court of Appeals
First Circuit.

Dec. 13, 1968.

Francis J. Frasier, Exeter, N. H., by appointment of the Court, with whom Shute, Engel & Frasier, Exeter, N. H., was on brief, for appellant.

Louis M. Janelle, U. S. Atty., with whom William H. Barry, Jr., Asst. U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

On June 13, 1967, a robbery occurred at the Durham Trust Company in Durham, New Hampshire. Appellant was arrested in Paterson, New Jersey, on August 8, 1967, and was subsequently indicted by a New Hampshire Federal Grand Jury for the offense.[1] After a five day trial appellant was convicted and sentenced to twenty-five years in prison.

### I—EXCLUSION OF NEWSPAPER STORY

The first error alleged by appellant is the trial court's refusal to admit into evidence a newspaper article on the bank robbery authored by Mrs. Terry Milton, the government's eyewitness. The court excluded the article on the grounds that "A newspaper is hearsay". The court may have been misled by the fact that there were two newspaper accounts in existence—one by Mrs. Milton and one by another reporter. The latter article was clearly unusable for any purpose but such was not the case with Mrs. Milton's article. There was no question of authentication since the article was identified and its authorship admitted by Mrs. Milton during the course of her testimony.

Mrs. Milton was the government's only eyewitness and it is fair to say that her testimony was a critical element in the government's proof. While the differences between her newspaper account and her testimony at the trial were not so substantial as appellant claims (and indeed certain of these differences are unfavorable to appellant), the appellant was entitled to have the jury evaluate Mrs. Milton's testimony in the light of cross-examination based on her account, written at a time shortly after the commission of the crime.

While the newspaper account was clearly usable for purposes of impeachment, it was not admissible as an exhibit. The colloquy and offer of proof were consistent with an effort to impeach through cross-examination on the basis of the account but no clear statement to this effect was made. It is possible that the court believed that the newspaper article was being offered as an exhibit. Indeed, much of appellant's brief on this point proceeds on the theory that the document was admissible. Since, however, there must be a new trial for other reasons, we do not now say that the court's laconic ruling was reversible error.

### II—JENCKS ACT STATEMENTS

Secondly, appellant objects to the trial court's procedure concerning the production of Jencks Act statements. Specifically, appellant contends that the trial court erred in failing to provide for receipt of the statements in the absence of the jury and in failing to call a recess in order to give defense counsel an opportunity to study the statements.

Appellant, however, made no effort to obtain access to the Jencks Act statements in the absence of the jury

---

[1]. Appellant was indicted specifically for violation of 18 U.S.C. § 2113(a) and (d) (1964).

and made no motion for a recess. He merely asked for and received time to study them. The gratuitous remarks of the court on the occasion of the first examination of a statement that he was not going to call a recess was not preceded by a request or followed by an objection. Under these circumstances, we can find no plain error.

In the interest of clarifying procedure in future cases, however, we make the following comments. Section 3500 of Title 18 of the United States Code, which grants the right of examination of pretrial statements of government witnesses, is silent as to the conditions which should surround the examination. Yet there exists the possibility of prejudice both to the defense and the prosecution. If defense counsel, after requesting and examining a statement before the jury, decides not to use it in cross-examining a witness, he runs the risk that a jury may infer that the statement was consistent with the testimony, resulting indirectly in accomplishing what cannot be done by the prosecution directly—using prior consistent statements to corroborate its own unimpeached witness. This danger has led the District of Columbia Circuit to declare it reversible error to require that requests and examination be made in the presence of the jury. Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966). Moreover, we can appreciate the likelihood that requiring defense counsel to read a possibly long and detailed statement for the first time and to decide its utility for cross-examination under the wondering eyes of a jury may add psychological burdens which are neither necessary nor helpful in securing a fair trial.

On the other hand, if Jencks Act statements are used in cross-examination with no indication how they came into the hands of defense counsel, the prosecution runs the risk that the jury will infer that it has concealed important information.

See United States v. Gardin, 382 F.2d 601 (2d Cir. 1967).

We are unwilling to promulgate a hard and fast rule. Undoubtedly in some cases Jencks Act statements should be produced and studied in the physical absence of the jury. This would be particularly true where a witness' testimony is lengthy and complicated, or is especially crucial in the context of a given trial. On the other hand, there will be many cases where it will be sufficient to produce the statements out of the hearing of the jury and to call a recess without excusing the jury from the courtroom. Thus, when defense counsel desires production of Jencks Act statements, he should be allowed to make such a request before the bench out of the hearing of the jury. If defense counsel so requests, the court can determine at that time whether it is necessary to remove the jury from the courtroom. If the statements are used in cross-examination, the jury should be informed of the source of the questions and the statutory authority governing the use of such statements. These procedures should be followed in this circuit in trials commencing after the date of publication of the opinion in this case.

### III—FBI AGENT LUCKSTED'S TESTIMONY

At the trial the government called FBI agent Lucksted to testify concerning an interview conducted with the appellant on June 26, 1967, in Paterson, New Jersey. Appellant contends that it was error to admit Lucksted's testimony because appellant was not apprised of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1965), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). When defense counsel objected on voir dire to the admission of this testimony,[2] the trial court ruled that the testimony

2. We note that appellant did not object to Lucksted's testimony at the trial but in view of his extensive objections on voir dire we have concluded that the issue may be raised in this appeal.

was admissible but the reasons given were at best ambiguous.[3]

While the court found that appellant was warned of his constitutional rights, it also seemed to say that the warnings were not required. Moreover, it seemed to say that if defendant were not in a situation requiring *Miranda* warnings, something less would do. This is not so. *Miranda* supersedes *Escobedo* so that if *Miranda* warnings are required there is no doubt that an accused is entitled to be told that counsel may be furnished him if he so desires and is unable to afford counsel. Finally, we cannot be sure that the court's finding that defendant was not "in custody" reflected consideration of the larger *Miranda* criteria of one's being in custody or "otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. We do not say that the interview in this case was custodial in nature. We say only that the record is so unclear that we cannot be sure that the trial court gave due consideration to the question of the applicability of *Miranda*.

█ Assuming that the interview was custodial in nature, it is arguable that the trial court found that appellant was adequately informed of his constitutional rights.[4] However, even assuming that appellant was so informed, we believe that, nothing more appearing, it was error to admit that part of the testimony relating to appellant's response to questioning. In *Miranda* the Supreme Court stated that:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475, 86 S.Ct. at 1628.

In this case appellant refused to sign a waiver of rights, and the trial court made no finding on the question of an intelligent waiver.[5]

At any subsequent trial of this cause, clear findings must be made as to the following points: (1) was the interview custodial in nature thereby requiring *Miranda* warnings; (2) assuming that the interview amounted to custodial interrogation, was appellant apprised of his constitutional rights; and (3) if he was so informed, was there a waiver of those rights?

## IV—INSTRUCTIONS

Appellant contends that the court erred in refusing his request that certain instructions be given to the jury. Specifically, appellant complains that the court refused to instruct: (1) that the defendant in a criminal case is under no obligation to offer evidence; (2) that each member of the jury must decide the case for himself; (3) on the credibility of testimony; and (4) on "the vagaries" of eyewitness' testimony.

█ Appellant's objection with respect to the instruction concerning the defendant's duty to offer evidence is not well taken. Although the court did not employ appellant's precise language, it did

---

3. The court made the following statement in response to appellant's objection:
   "Well, I think that it is just another interview, and I find that he was sufficiently warned, that he was not in custody, and that the requirement that he be furnished with a lawyer was not required * * *."

4. See n. 3, supra.

5. We can well appreciate the court's confusion on this issue—confusion that was contributed to by both defense counsel and the United States Attorney. For example, on the question of waiver the United States Attorney offered the following statement:

   "There is a recent Supreme Court— there is a recent decision, Your Honor, and the name of it passes me by at this point, but the basis of the determination is that a defendant does not have to intelligently waive his rights."

charge that the defendant's failure to testify was not to be considered by the jury, and, most importantly, that it was the government's duty to prove guilt beyond a reasonable doubt.

The instruction relating to the duty of individual jurors presents a more troublesome question. The court never informed the jury that their verdict must represent the unanimous judgment of all, independently arrived at by each juror. However, after the verdict was returned, the jury was polled and each member stated that the verdict was his. Possibly this negates any argument that harm resulted to appellant. In any event, since there must be a new trial, an instruction on the duties of a juror should be given at that trial.

Finally, appellant complains that neither credibility nor eyewitness instructions were given. In some cases, as where there is a conflict in testimony as to the identity of the perpetrator of a crime, an eyewitness instruction may be required. Gregory v. United States, supra. In the case before us, when the prosecution depended heavily on one eyewitness, such an instruction was at least desirable. In many cases, so long as either an eyewitness or a credibility instruction is given, together with the reasonable doubt instruction, a defendant is adequately protected on the issue of identity. See Jones v. United States, 124 U.S.App.D.C. 83, 361 F.2d 537 (1966). All we hold here is that the failure to give either instruction was clearly erroneous.

We pass, as meriting no comment, other alleged errors based on situations not likely to be repeated in another trial and the argument that the court should have granted appellant's motion for judgment of acquittal. Since error was committed both in the rationale leading to the admission of defendant's conversation with Agent Lucksted and in the refusal of certain requested instructions, we must remand.

Reversed. Remanded for a new trial.