El Pueblo de Puerto Rico, demandante y apelado, *v.* Cándida Hernández Soto, Juanita Hernández Soto, acusadas y apelantes.

*Número:* CR-68-127 *Resuelto:* 18 de marzo de 1971

*Santos P. Amadeo, Miguel Ángel Salicrup Cabelo, F. Gallardo Díaz,* abogados de las apelantes; *Rafael A. Rivera Cruz, Procurador General,* y *J. F. Rodríguez Rivera, Subprocurador General, Peter Ortiz, Subprocurador General Interino,* y *Juan José Ríos, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Se trata de un caso de hurto mayor.[1] La prueba demuestra que las dos acusadas y una tercera persona, actuando en concierto y de común acuerdo entre sí, sustrajeron ilegalmente mediante un ardid un televisor portátil, un radio portátil y una plancha eléctrica de una tienda de muebles y de enseres del hogar sita en Río Piedras, Puerto Rico. El ardid consistió en que mientras una de ellas se hacía explicar de la encargada del negocio cómo funcionaba una máquina de lavar ropa las otras dos sustrajeron y sacaron de la tienda los mencionados objetos.

Las apelantes fueron acusadas del delito de hurto mayor, 33 L.P.R.A. sec. 1683, y un jurado las declaró culpables del delito imputado.

En apelación ante nos, en el expediente hay un alegato firmado por un abogado y hay otro alegato complementario firmado por otro abogado. En total, en ambos alegatos señalan nueve errores pero como hay cuatro repetidos, los señalamientos de error se reducen a los cinco errores que discutimos a continuación. Los discutimos en orden distinto al que tienen en los alegatos.

■ En el primer señalamiento de error se impugna la suficiencia de la prueba. No tiene mérito. Hemos examinado la transcripción de evidencia. La prueba, creída como lo fue por el jurado, es suficiente para sostener las convicciones.

El segundo señalamiento es al efecto de que el tribunal permitió al fiscal comentar, en su argumentación al jurado, el silencio de la acusada Juanita Hernández, en violación del Art. II, Sec. 11 de la Constitución de Puerto Rico y de la Enmienda Quinta a la Constitución de los Estados Unidos. Veamos lo ocurrido. En el juicio, la referida acusada declaró. A preguntas de su abogado declaró sobre su nombre, su dirección, su estado civil, que no trabajaba porque la mantenía

---

[1] Se cometen en Puerto Rico 51,707 hurtos, robos y escalamientos al año. Por día son 141 y por hora 6.—*Informe Anual de la Policía de Puerto Rico, 1969–1970,* pág. 36.

su esposo, que tiene muebles en su casa, que tiene un televisor, y que su esposo le provee todas sus necesidades. El fiscal, en el contrainterrogatorio, luego de pasar sobre los asuntos ya mencionados, comenzó a preguntarle sobre el día de los hechos pero el abogado defensor objetó y se produjo el siguiente diálogo:

"LIC. SALICRUP: No ha sido objeto de la prueba directa.

HONORABLE JUEZ: Tiene la razón la defensa.

SEÑOR FISCAL: Entendemos que tiene razón, no vamos a entrar a los hechos, sino para ver . . .

HONORABLE JUEZ: Es que ella no ha hecho referencia en forma alguna al 23 de agosto, ella no ha hablado de esa fecha, no puede ser objeto de contrainterrogatorio, lo que ocurrió ese día, porque no ha hablado nada de eso en el interrogatorio directo."

Nótese que la objeción que sostuvo el juez al contrainterrogatorio del fiscal se debió a que lo que se trataba de investigar no había sido parte del interrogatorio directo y no porque dicho interrogatorio violase el derecho a permanecer en silencio. Se trataba de una conocida regla de evidencia y no de un problema de autoincriminación.

Como el objetado comentario del fiscal fue hecho en su informe al jurado y como el informe no aparece transcrito en el récord, mediante nuestra resolución de 9 de octubre de 1968 solicitamos de las partes que reprodujesen el alegado comentario al silencio de la acusada. Las partes elevaron una estipulación, la cual sometieron previamente al Tribunal Superior y la cual fue aprobada por dicho Tribunal, estipulando que el comentario del fiscal fue el siguiente:

"Ustedes, damas y caballeros del jurado, tuvieron la oportunidad de oir a la coacusada Juanita Hernández Soto, mientras declaraba. Su declaración se limitó única y exclusivamente a señalar su condición económica, a la fecha de estos hechos. Tuvo la oportunidad de refutar la prueba de cargo y explicar, en qué consistió su intervención y su presencia en el sitio de los hechos; no lo hizo porque no le convenía y eso deben ustedes tomarlo en consideración al decidir este caso."

Lo ocurrido en el juicio cuando el fiscal hizo ese comentario fue lo siguiente, según se desprende de la transcripción de evidencia:

"LIC. SALICRUP: (Hace su informe al jurado).

HONORABLE JUEZ: El señor fiscal puede hacer su informe de rectificación.

SEÑOR FISCAL: (Hace su informe final a los jurados).

LIC. SALICRUP: (Durante el informe del fiscal). Vamos a objetar, está entrando en el silencio de la acusada.

SEÑOR FISCAL: ¿Qué silencio? Se sentó.

LIC. SALICRUP: Sí, Vuestro Honor, está interpretándole ante el Jurado.

HONORABLE JUEZ: El fiscal tiene derecho a argumentar sobre lo que ella no dijo en la silla de los testigos, y después de sentarse y renunciar al derecho de no declarar que tenía.

LIC. GALLARDO: Tomamos excepción."

■ Como se sabe, el acusado no está obligado a declarar contra sí mismo ni puede obligársele a ello, pero tiene el privilegio de declarar en su propio interés y si lo hace se somete a todas las disposiciones que regulan el examen directo y de repreguntas de testigos. *Pueblo* v. *González*, 35 D.P.R. 675, 677 (1926); *Pueblo* v. *Archeval*, 74 D.P.R. 512, 516 (1953); *Pueblo* v. *Rodríguez García*, 85 D.P.R. 467, 474 (1962).

En este caso tenemos que examinar la situación un poco más de cerca porque aquí no se dan las situaciones clásicas de (1) un acusado que no se sienta a declarar en absoluto y cuyo silencio no puede comentarse, ni (2) la de un acusado que se sienta a declarar sobre toda la transacción delictiva envuelta en el juicio. En este caso la acusada optó por declarar sobre unos extremos y optó por no declarar sobre otros. La posición que asume la acusada es que se sentó y no se sentó. De una lectura de la transcripción de evidencia se desprende que ella quiso declarar sobre su situación económica *para demostrar que era solvente y que no tenía nece-*

*sidad de participar en el hurto que se le imputaba.* Su declaración tenía, pues, una relación directa con el *issue* de su culpabilidad.

Un caso parecido pero no exacto al de autos es el de *People* v. *Pérez,* resuelto por el Tribunal Supremo de California en el año 1967, 422 P.2d 597. La acusación de robo contra Pérez contenía cuatro cargos. Pérez optó por declarar sobre los cargos primero y segundo pero no declaró sobre los cargos tercero y cuarto. El fiscal comentó que podía hacerse una inferencia desfavorable en contra del acusado por el hecho de que éste no había explicado ni negado hechos relacionados con los cargos tercero y cuarto que él conocía. El magistrado que presidía la sala sostuvo al fiscal y además dio una instrucción al jurado en el sentido de que podía hacer una inferencia adversa al acusado debido a que éste no había explicado ni negado hechos que él conocía.

En su opinión, el Tribunal Supremo de California reconoce que en vista de los casos de *Malloy* v. *Hogan,* 378 U.S. 1 y *Griffin* v. *State,* 380 U.S. 609, el privilegio contra la autoincriminación de la Quinta Enmienda es aplicable a los estados y por lo tanto a California.

Señaló además que en *Griffin* el acusado no declaró en el juicio en el cual se dilucidaba su inocencia o su culpabilidad, (2) pero que Pérez sí declaró, y que había que determinar hasta qué extremo éste había renunciado al privilegio de no autoincriminarse. Razonó el Tribunal que existía una relación entre los cuatro cargos y que el contrainterrogatorio sobre los cargos tercero y cuarto hubiese sido propio.

Concluyó el Tribunal que el comentario del fiscal y la instrucción del juez no violaron el derecho constitucional del acusado a no autoincriminarse. Expresó que el acusado al sentarse a declarar renunciaba dicho derecho constitucional en la medida en que sería permisible el contrainterrogatorio.

---

(2) Pero declaró en otro juicio en el cual se ventilaba lo relativo a la pena que le debía ser impuesta por motivo de su convicción.

Como estimó que hubiese sido propio el contrainterrogatorio sobre los cargos tercero y cuarto (por existir una relación entre los mismos basada en que los hechos demostraban cierto plan o *modus operandi* similar al de los cargos primero y segundo) el Tribunal concluyó que el comentario del fiscal y la instrucción del juez no invadían ningún área prohibida para ellos. El Tribunal Supremo de California sostuvo la convicción. El Tribunal Supremo de los Estados Unidos expidió un *certiorari* en este caso pero luego lo anuló (*dismissed as improvidently granted*) 395 U.S. 208 (1969).

■ En el caso de autos, igual que en el mencionado caso de *Pérez*, supra, hay una relación directa entre la declaración de la acusada y el *issue* de su inocencia o culpabilidad pues su declaración tendía a llevar a la mente del jurado la idea de que siendo ella solvente no podía ser culpable del delito que se le imputaba. Claro, el argumento es un *non sequitur* pues a veces personas solventes hurtan, pero sabemos que a los jurados se le presentan a veces argumentos falaces. Cuando la acusada voluntariamente se sentó a declarar sobre esos extremos se abrió a ser contrainterrogada sobre el *issue* de su culpabilidad. En otras palabras, al ofrecer testimonio relacionado con el *issue* de su culpabilidad o inocencia renunció al privilegio de la autoincriminación.

En apoyo de una posición contraria se nos han mencionado los casos de *Griffin* v. *California*, 380 U.S. 609 y *Johnson* v. *United States*, 318 U.S. 189. Estos casos no resuelven el problema planteado en el de autos. En *Griffin* se trataba de un caso de asesinato; el acusado fue convicto y se le impuso la pena de muerte. En dicho caso el acusado *no se sentó* a declarar y el fiscal y el tribunal comentaron adversamente para el acusado el hecho de que éste guardase silencio. Desde luego, allí la violación al derecho constitucional fue clara y se imponía la revocación, como de hecho se hizo.

En el caso de *Johnson*, supra, los hechos son tan distintos que dicho caso es claramente distinguible del de autos. Allí

el testigo, en el curso de su declaración quiso acogerse expresamente a la Quinta Enmienda aduciendo que contestar a determinadas preguntas sobre sus ingresos del año 1938 lo incriminaría y daría lugar a que se le formulasen nuevas acusaciones. El tribunal de instancia declaró con lugar la objeción del testigo al contrainterrogatorio pero luego permitió al fiscal comentar ese hecho al dirigirse al jurado. El Tribunal Supremo tomó la posición de que la objeción fue erróneamente sostenida por el tribunal de instancia pero que una vez sostenida el fiscal no podía hacer el comentario que hizo. Nótese que allí la objeción al contrainterrogatorio no se basó en que el asunto no había sido objeto del interrogatorio directo, sino que el *issue* directa y escuetamente fue el de la autoincriminación. A pesar de lo anterior, el Tribunal Supremo se expresó como sigue, a la pág. 195:

"El caso de un acusado que voluntariamente se sienta a declarar y el caso de otro acusado que no declara . . . son, desde luego, vastamente diferentes ("are of course vastly different"). El 'testimonio voluntario [del que declara] implica una renuncia a su derecho a guardar silencio en cuanto a todos los demás hechos relevantes, debido a la conexión que existe entre dichos hechos . . . .' "

A la pág. 196 el Tribunal dijo:

". . . podemos asumir que el Tribunal no hubiese cometido error si hubiese denegado la objeción del testigo . . . el éste no explicar el origen de sus ingresos del año 1938 pudo haber sido propiamente objeto de comentarios y de inferencias. [Citas omitidas.] Un acusado que declara 'no puede hacerlo parcialmente omitiendo o dejando de explicar circunstancias incriminatorias que ya han pasado ante el Tribunal, en las cuales él participó y sobre las cuales está informado, y a la vez evitar que su silencio sea objeto de las inferencias que puedan hacerse del mismo.' "

En este caso de *Johnson* el Tribunal confirmó la convicción que se trataba de revocar.

El tercer error es al efecto de que el Tribunal erró al instruir al jurado sobre la fuga o huida de las acusadas del

lugar de los hechos. Cándida, una de las coacusadas, declaró que cuando la otra coacusada, Juanita, echó el televisor dentro de un bolso, ella, Cándida, "lo único que pude inventarme . . ." fue "decir 'se me fue la nena' y salí corriendo." T.E. pág. 114. También declaró "yo no andaba con ninguna nena." Dos páginas más adelante volvió a declarar:

"Ella, Juanita, siguió detrás de mí corriendo y entonces yo prendí el carro y me fuí; nos montamos las dos y nos fuímos." T.E. pág. 116.

La instrucción del juez sobre esos extremos fue mesurada en su exposición y no fue perjudicial para las acusadas. Realmente lo que fue perjudicial para las acusadas fueron los hechos en sí. Explicó el juez que:

"Ha habido prueba aquí, que tiende a demostrar, a establecer, que a raíz de ocurrir estos hechos, las acusadas salieron corriendo de la mueblería donde se alega que ocurrieron los hechos. En relación a estas circunstancias debo instruir a ustedes en la siguiente forma: la huída de una persona inmediatamente después de haberse cometido un crimen o un delito cualquiera, o después de haber sido acusada de haber cometido un delito, no es suficiente por sí sola, para establecer su culpabilidad, pero, es un hecho, es una circunstancia que una vez probada puede ser considerada por ustedes en relación con las demás circunstancias, al decidir ustedes si el acusado es inocente o culpable, son ustedes los llamados a determinar por el análisis y la ponderación que hagan de toda la prueba practicada y además, de estas circunstancias, de esta circunstancia en particular, si estas dos acusadas o una de esas acusadas, se dieron o se dio a la fuga, si de hecho se fugaron de allí, se huyeron, o si como dijo una de ellas, salió corriendo por la explicación que ella dio, que ustedes oyeron, y no estamos haciendo el análisis de la prueba ahora. Ahora, si ustedes entienden que una de ellas se fugó de allí, o las dos de ellas, en cualquier caso, es una circunstancia a considerar por ustedes, a los fines de determinar su responsabilidad criminal en este caso, porque la huída o fuga de una persona tiende a indicar una conciencia culpable, un sentimiento de culpabilidad y son ustedes los llamados a determinar, les repito, si hubo fuga o no la hubo; y si hubo la huída de ambas acusadas,

o de alguna de ellas, qué importancia, o que falta de importancia, o insignificancia ven ustedes en esas circunstancias de la salida de las acusadas y la forma en que salieron de la mueblería donde se alegan ocurrieron los hechos."

Esa parte de las instrucciones, tomadas en conjunto con las demás explicaciones que dio el juez sobre duda razonable y sobre la naturaleza del delito imputado, no fueron erróneas. *Pueblo* v. *Vega Santos*, 88 D.P.R. 272 (1963); *Pueblo* v. *Ortiz*, 85 D.P.R. 160 (1962). No se cometió el tercer error señalado.

En el cuarto señalamiento de error (en el orden en que nosotros los estamos discutiendo) se alega que el Tribunal erró al instruir al jurado sobre duda razonable. Por dos razones independientes entre sí y suficientes cada una de ellas, no se cometió este error. La primera razón es que las apelantes no cumplieron con la Regla 137 de Procedimiento Criminal, la cual dispone que:

"Ninguna de las partes podrá señalar como error cualquiera porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud."

*Pueblo* v. *Del Valle*, 91 D.P.R. 174, 179 (1964); *Pueblo* v. *García*, 78 D.P.R. 386, 405 (1955); *Pueblo* v. *Cirino*, 69 D.P.R. 525 (1948); *Pueblo* v. *Díaz*, 63 D.P.R. 987 (1944).

La otra razón es que las instrucciones dadas en este caso son suficientes. Copiarlas aquí sería prolijo. Pueden verse en las págs. 156 a la 159 de la transcripción de evidencia. Son instrucciones que han pasado la prueba de la experiencia y la judicial. *Pueblo* v. *Gagot Mangual*, 96 D.P.R. 625 (1968); *Pueblo* v. *Dávila*, 85 D.P.R. 450 (1962). No se cometió el cuarto error señalado.

El quinto señalamiento de error es en el sentido de que el veredicto es nulo por no haber sido rendido por la unanimidad del jurado. Este planteamiento ha sido resuelto en forma

adversa para las apelantes. La Constitución del Estado Libre Asociado de Puerto Rico provee, en su Art. II, Sec. 11, que en los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve. *Fournier* v. *González*, 80 D.P.R. 262 (1958); *Fournier* v. *González*, 269 F.2d 26 (1959); *Jaca Hernández* v. *Delgado*, 82 D.P.R. 402 (1961); *Pueblo* v. *Delgado Lafuente*, 97 D.P.R. 266 (1969).

El derecho constitucional puertorriqueño garantiza plenamente que en todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia.

Nadie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra. Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito. Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio. La detención preventiva antes del juicio no excederá de seis meses. Las fianzas y las multas no serán excesivas. Nadie será encarcelado por deuda. Constitución de Puerto Rico, Art. II.

■ Pero nuestro jurado—de origen estatutario y ahora constitucional—no es el *common law jury* que opera por unanimidad. Nuestras circunstancias históricas, sociológicas y nuestra relación constitucional especial con los Estados Unidos [3] justifican en Puerto Rico el veredicto de un jurado

---

(3) Reconocidas por el Tribunal Supremo federal. *Katzenbach* v. *Morgan*, 384 U.S. 641, 658 (1966).

compuesto por doce vecinos y rendido por una mayoría de no menos de nueve. Véanse *Fournier* v. *González*, 80 D.P.R. 263 (1958); *Fournier* v. *González*, 269 F.2d 26; Ley Pública 600, 64 Stat. 314; Ley Pública 447, 66 Stat. 327; Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 11; "*Puerto Rico's New Self-Governing Status*," 28 Department of State Bulletin 584 (1953); Resolución 151 de la Asamblea General de las Naciones Unidas aprobada en su Sesión Plenaria Núm. 459 de 27 noviembre 1953; Gutiérrez Franqui and Wells, *The Commonwealth Constitution*, 285 The Annals of the American Academy of Political and Social Science 33 (1953); Magruder, Calvert, *The Commonwealth Status of Puerto Rico*, 15 U. Pitt. L. Rev. 1 (1953); Wells, *The Modernization of Puerto Rico* (1969); Clark and Rogers, *The New Judiciary Act of Puerto Rico*, 61 Yale L.J. 1147 (1952).

*No habiéndose cometido los errores señalados se confirmarán las sentencias apeladas.*

El Juez Presidente Interino Señor Pérez Pimentel no intervino. El Juez Asociado Señor Hernández Matos disintió.