THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN ALICEA CRUZ, Defendant and Appellant.

No. CR-70-183.      Decided December 7, 1971.

*Santos P. Amadeo, Raúl Torres González,* and *Benjamín Ortiz* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Adolfo Negrón Cruz, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant, Juan Alicea Cruz, having been accused and convicted, through trial by jury, of murder in the first degree, for having caused the death of his concubine, Aida Delgado Núñez, whom he forced to drink what turned out to be

strychnine, raises before this Court a series of assignments which, in our opinion, do not have merit. Hereinafter we explain why.

In our opinion, the Solicitor General correctly summarizes the facts of the case, thus:

"The facts occurred on February 11, 1966, at about 3:00 a.m. in the Yambele sector of Ward Frailes in Guaynabo. The boy Juan Alicea Delgado, born from the relations of defendant-appellant with the victim, slept in the same room in a double-deck bed. He witnessed when the defendant-appellant, through force and against the will of the victim, administered her something to drink by raising a tumbler to her lips. She screamed: 'Oh mother, save me, Johnny kills me.' The boy raised the mosquito net of his bed and saw when his father grabbed his mother's nose, opened her mouth and raised the glass to her. The victim was lying down and defendant-appellant was on her belly and he held her hands.

"Hearing the screams of the victim, her mother Carmen Núñez, her father, and her sisters Felícita Miranda and Gloria Miranda, who lived nearby, came at once. When the latter arrived, defendant-appellant did not want to open the door, but he did open it when Doña Carmen hit the door with her fist.

"The defendant started to comb his hair calmly before the mirror. Doña Carmen told him: 'Johnny, you always had it your way, you surely killed my daughter,' to which he said: 'It was a Cortal which I gave her because she had pains.' The victim was naked with half of her body on the bed and the other half dangling on the floor. She kept screaming with less strength: 'he killed me, he poisoned me,' 'Oh mother, come, Johnny kills me, he poisoned me.' Her son Johnny 'was sticking his head through the mosquito net . . . and he was somewhat nervous.' It was so testified by Felícita Miranda, the victim's sister.

"Aida Delgado Núñez was taken to the Health Center of Guaynabo in defendant-appellant's bus, who was driving very slowly. It took him more than half an hour. There she was interned in the emergency ward at about 3:00 a.m. screaming with pains: 'I am dying, I am dying, stop this pain.' She was administered an intramuscular injection of one gram of luminal. Since she did not answer to that treatment, the physician de-

cided to send her to the District Hospital, after having been from 15 to 20 minutes in the Center. The patient bit her tongue and lips. Her fingernails were turning cyanotic, bluish, and the face pale. She died on the way to the Hospital Universitario of acute poisoning caused by strychnine, as it appears from the record of the autopsy of Dr. Néstor A. Loinaz. . . . One year before appellant had uttered threats of killing Delgado Núñez, to the latter's mother, and a month before to a neighbor."

1.—Appellant assigns that the jury's verdict is null and void because it was not unanimous. It was by a majority of 10 to 2.

■ On several occasions we have decided this assignment in an adverse manner to appellant. *People* v. *Hernández Soto*, 99 P.R.R. 746 (1971) ; *People* v. *Maldonado Dipiní*, 96 P.R.R. 874 (1969) ; *People* v. *Robles Robles*, Cr-71-2, judgment of October 18, 1971; *People* v. *Salinas Colón*, Cr-67-214, judgment of January 14, 1971.

2.—Appellant assigns that the trial court erred in allowing appellant's counsel to waive, without appellant's express or intelligent consent, the court's summary of the evidence.

■ In the case of *People* v. *Nazario Nieves*, ante, p. 230, we considered this assignment and concluded that the aforesaid appellant's consent is not necessary. Appellant does not adduce anything in the instant case which would move us to change our mind in regard to this contention.

■ 3.—Appellant argues that the trial court erred in failing to charge the jury "in the sense that upon taking into consideration the testimony of the seven-year-old boy Juan Alicea Delgado, they would take into consideration his age, the fact that the boy was all the time under the custody and influence of his maternal grandmother, and any other factor which might affect his credibility."

The trial court was not requested in due time to give such instruction to the jury. *People* v. *Del Valle*, 91 P.R.R. 167 (1964). In his brief appellant's counsel has not made a

conscientious analysis of the boy's testimony, nor of his cross-examination showing the need for such instruction. Neither does he show us which substantial prejudice appellant could sustain due to the lack of such instruction.

He restricts himself to point out to us that we have decided that this type of instruction should be given in cases of abuse of minors, rape, and other sexual crimes; that in the case of the boy in question, although it is not a case involving sex offenses the special circumstances which surround this witness' testimony justified that the trial judge gave them a similar instruction to those given in the aforementioned cases, despite the fact that it was not requested. See *People* v. *Serrano Olivo*, 93 P.R.R. 725, 727 (1966).

We have analyzed the testimony of the aforesaid child and we do not find that he had been influenced by his grandmother or by any other factors to the point of requiring the instruction in question. On the contrary, we find that, even in the case that the instruction would have been necessary, its omission was not prejudicial, since abundant corroborative evidence was presented through other witnesses who heard the same screams of the victim, which the child said he heard.

4.—Appellant alleges that the trial court erred in failing to give instructions on the evidence of res gestae and on statements in *articulo mortis* and the differences between both, in connection with the testimonies of witnesses Juan Alicea Delgado, Felícita Miranda, and Carmen Núñez, to the effect that they heard when the victim was screaming and said that the defendant was killing her.

Appellant did not request these instructions in due time. Neither does he cite any case law in support of this contention. He limits himself to say that the testimonies in question cannot be considered as part of the res gestae or of statements in *articulo mortis* of the victim, and that the judge should have charged the jury about this, "since it was necessary for the jury to have some clear directives in order to determine the

guilt or innocence of defendant-appellant," and that such omission "prevented the jury from actually understanding whether or not it should have believed the statements of the deceased."

Appellant's counsel has not properly enlightened this Court in regard to this contention.

The testimonies concerning the screams of the deceased are not admissible on the basis of subd. 3 of § 397 of the Code of Civil Procedure, § 35(3) of the Law of Evidence (32 L.P.R.A. § 1678(3)),[1] since such declarations could only be admitted under the authority of this provision, in order to prove the acquiescence or admission of the defendant in the face of the charge. *People* v. *Ong Mon Foo*, 189 P. 690, 692 (Cal. 1920). See *People* v. *Lew Fat*, 207 P. 881 (Cal. 1922). It is under this circumstance that the jury should be instructed on the limited purpose for which the evidence is admitted.

■ The screams to which the aforesaid contention refers were the following, "Oh mother, save me, Johnny kills me." In the direct examination the witnesses for the prosecution Juan Alicea Delgado, Felícita Miranda, and Carmen Núñez, testified in connection with the same.

The child witness Juan Alicea Delgado also testified that he heard his mother, the deceased, utter those screams while the witness observed from his bed next to that of his mother, when his father forced her to drink from a tumbler which he raised to her, after opening her mouth, while he held her nose.

Also, Felícita Miranda, who is the sister of the victim and lives at about thirty-five feet from the scene of the crime, woke up when she heard the screams of the deceased and said

---

[1] The aforesaid § 397(3) provides that "An act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto," is admissible in evidence. This provision was taken from § 1870 of the Code of Civil Procedure of California, which has been repealed.

"since I am used to sleeping in a dressing gown, I got up immediately, opened the door and ran towards the house of my sister." After knocking at the door "for fifteen minutes more or less," the defendant opened the door. To questions of Felícita Miranda, who was the first person who entered into the room, the victim "screamed with less strength, he killed me, he poisoned me." Under these circumstances, the deceased was still under the influence or effects of the event which gave rise to the chain of events, and such statements can be considered as part of the res gestae, despite the fact that they arise in response to a question. See I Wharton, *Criminal Evidence* 633, § 280 (12th ed.).

We conclude that under the foregoing circumstances the statements in question were admissible as part of the res gestae. *People* v. *Dueño Maysonet*, 94 P.R.R. 676, 683 (1967).

■ Finally, in *People* v. *Crespo*, 21 P.R.R. 285, 294 (1914), we said:

"Perhaps if the defendant had requested it, the court might have given the instruction in regard to what was properly res gestae in the case. Otherwise, as the fiscal maintains, *the question of whether a particular piece of evidence is res gestae or not is for the court, and the jury is entitled to consider the particular testimony along with all the other proof in the case.*" (Italics ours.)

■ 5.—Appellant assigns that his rights were prejudiced by the fact that the statements given by the witnesses Juan Alicea Delgado, Felícita Miranda, and Carmen Núñez to the agents before the trial, were given to the defense in the presence of the jury and of the trial judge, since if the defense did not use the statements to challenge the witnesses, the jury could infer that the testimonies given at the trial were consistent with what had been testified before the prosecuting attorney during the investigation. He grounds his contention in *Pallotta* v. *United States*, 404 F.2d 1035 (1st Cir. 1968); *Gregory* v. *United States*, 369 F.2d 185 (U.S. Ct. of App.,

D.C. Cir. 1966) and *People* v. *Beard*, 214 N.E.2d 577, 581 (App. Ct. Ill. 1966).

This assignment is made by the defense for the first time on appeal. At no time did the defense request the judge who presided at the hearing to withdraw the jury. It does not come forth from the record either that the jury was conscious of the fact that the prosecuting attorney had given the testimonies to the defense.

It has not been pointed out that in the instant case, nor in any other case, the practice followed up to this moment in this jurisdiction may have affected the fundamental rights of the defendant so as to render the trial void.

Concerning this part of this opinion, the writer will state his point of view in an explanatory vote.

■ 6.—Appellant charges the jury with prejudice and passion in the weighing of the evidence. He does not analyze the same with the purpose of supporting this assignment. Appellant has limited himself to point out that in view of the contradictions of the witnesses for the prosecution, contradictions which he does not specify, and of the fact that, in its greater part, said witnesses were relatives and friends of the deceased, their testimonies did not deserve the credit which the jury gave them.

We have examined the testimonies of the witnesses for the prosecution and we did not find in the record any grounds whatsoever to conclude that the jury acted in a prejudiced manner or on the basis of passion or partiality. The verdict, on the contrary, is broadly supported by the evidence.

In view of the foregoing, the judgment rendered in this case by the trial court on November 28, 1966, should be affirmed.

Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, and Mr. Justice Martín took no part in this decision. Mr. Justice Ramírez Bages issued an explanatory opinion.

—O—

Explanatory opinion of Mr. Justice Ramírez Bages.

San Juan, Puerto Rico, December 7, 1971

In regard to the request, delivery and use of the statements of the witnesses for the prosecution in the presence of the jury, question raised in the fifth assignment considered in the opinion of the instant case, the Court of Appeals of the First Federal Circuit, stated in *Pallotta* v. *United States*, 404 F.2d 1035 (1st Cir. 1968), thus:

". . . If defense counsel, after requesting and examining a statement before the jury, decides not to use it in cross-examining a witness, he runs the risk that a jury may infer that the statement was consistent with the testimony, resulting indirectly in accomplishing what cannot be done by the prosecution directly —using prior consistent statements to corroborate its own unimpeached witness. This danger has led the District of Columbia Circuit to declare it reversible error to require that requests and examination be made in the presence of the jury. Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966). Moreover, we can appreciate the likelihood that requiring defense counsel to read a possibly long and detailed statement for the first time and to decide its utility for cross-examination under the wondering eyes of a jury may add psychological burdens which are neither necessary nor helpful in securing a fair trial.

"On the other hand, if Jencks Act[1] statements are used in cross-examination with no indication how they came into the hands of defense counsel, the prosecution runs the risk that the jury will infer that it has concealed important information. See United States v. Gardin, 382 F.2d 601 (2d Cir. 1967)."

The sworn statements given by the witnesses for The

---

[1] Jencks Act, Pub. L. 85–269, Sept. 2, 1957, 71 Stat. 595; 18 U.S.C. § 3500, which incorporates the standard established in *Jencks* v. *United States*, 353 U.S. 657 (1957). See *People* v. *Ribas*, 83 P.R.R. 371 (1961). Neither the Jencks Act nor the decision in *Jencks, supra,* establish anything in regard to the question discussed in the case under our consideration.

People during the stage of the investigation of the criminal prosecution are hearsay evidence and, consequently, inadmissible in evidence. However, after a witness for The People has testified, the defendant is entitled to receive a copy of the statement which the witness gave to the prosecuting attorney, or to any other officer doing the investigation for the purposes of impeachment of said witness, if there were contradictions between the testimony in open court and the testimony given by the witness prior to the trial. *People* v. *Ribas, supra.*

In my opinion, in the exercise of our governing function, we should have adopted the following rule for subsequent cases, and in regard to the request, delivery, and use of the statements signed by the witnesses for the prosecution:

The defense counsel may prevent any possibility that prejudice be caused to the impartiality of the proceeding, as it is set forth in *Pallotta* v. *United States, supra; Gregory* v. *United States, supra,* and *United States* v. *Gardin, supra.* He may direct his request to examine the aforesaid statements to the judge in the absence of the jury. For that purpose, the trial court should order the removal of the jury. The defense counsel will never be required to make such request in the presence of the jury.

In case that said counsel uses and presents in evidence the aforesaid statements to impeach the witness, besides the instructions which are ordinarily given about the purpose and scope of that evidence, the jury should be instructed that the investigation of the prosecuting attorney is private and that, therefore, the defendant is not entitled to examine the sworn statements of the witnesses for the prosecution, which appear in the record of the prosecuting attorney, until the court orders it after the witness has testified in his direct examination.