EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN ALICEA CRUZ, acusado y apelante.

*Número:* CR-70-183     *Resuelto:* 7 de diciembre de 1971

*Santos P. Amadeo, Raúl Torres González* y *Benjamín Ortiz,* abogados del apelante; *Gilberto Gierbolini, Procurador General,* y *Adolfo Negrón Cruz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Acusado y convicto el apelante Juan Alicea Cruz, mediante juicio por jurado, de asesinato en primer grado, por haber causado la muerte de su concubina Aida Delgado Núñez a quien obligó a tomar lo que resultó ser estricnina, plantea ante nos una serie de apuntamientos que, a nuestro juicio, son inmeritorios. A continuación explicamos por qué.

El Procurador General resume los hechos del caso, correctamente a nuestro juicio, así:

"Los hechos ocurrieron el 11 de febrero de 1966, alrededor de las tres de la madrugada, en el sector Yambele del Barrio Frailes de Guaynabo. El niño Juan Alicea Delgado habido en las relaciones del acusado-apelante con la víctima dormía en la misma habitación en una cama de dos pisos. Presenció cuando el acusado-apelante mediante la fuerza y contra la voluntad de la víctima le administró algo de tomar empinándole un vaso pequeño por la boca. Esta gritaba: 'Ay mami, sálvame Johnny me mata.' El niño alzó el mosquitero de su cama y vio cuando su padre le aguantaba la nariz su madre, le abrió la boca y le empinó el vaso. La víctima estaba acostada y el acusado-apelante encima de la barriga de ella y le tenía aguantadas las manos.

Ante los gritos de la víctima acudieron inmediatamente su madre Carmen Núñez, su padre y sus hermanas Felícita Miranda y Gloria Miranda, quienes vivían cerca del lugar. Cuando éstas llegaron el acusado-apelante no quería abrirles la puerta, pero lo hizo cuando doña Carmen le dio un puño a la puerta.

El acusado comenzó a peinarse serenamente frente al espejo. Doña Carmen le expresó: 'Johnny, siempre se salió con la suya, siempre me mató a la hija', a lo que él indicó: 'fue una cortal que le dí porque tenía dolor.' La víctima estaba desnuda con la mitad del cuerpo en la cama y la otra mitad colgándole del suelo. Continuaba gritando con menos fuerza: 'el me mató, me envenenó.', 'Ay mami, ven que Johnny me mata, me envenenó.' Su hijo Johnny 'estaba asomado por el mosquitero . . . y como nervioso.' Así declaró Felícita Miranda, hermana de la interfecta.

La Delgado Núñez fue llevada al Centro de Salud de Guaynabo en la guagua del propio acusado-apelante, quien iba guiando muy lentamente. Se tomó más de media hora. Allí fue ingresada

en la sala de emergencia como a las tres de la mañana gritando de dolor: 'me muero, me muero, quítenme este dolor.' 'Se le puso una inyección intramuscular de un gramo de luminal. Como no respondió al tratamiento, el médico decidió enviarla al Hospital de Distrito, después de haber estado en el Centro de 15 a 20 minutos. La paciente se mordía la lengua y los labios. Las uñas se le iban poniendo cianóticas, moradas y la cara pálida. Murió camino al Hospital Universitario por intoxicación aguda por estricnina, según surge del protocolo de autopsia del Dr. Néstor A. Loinaz . . . . El apelante le había manifestado amenazas de matar a la Delgado Núñez, a la madre de ésta, un año antes y a una vecina un mes antes."

1.—Apunta el apelante que el veredicto del jurado es nulo e ineficaz porque no fue dictado por unanimidad. Fue por mayoría de 10 a 2.

■ Hemos resuelto este apuntamiento en forma adversa al apelante en repetidas ocasiones. *Pueblo* v. *Hernández Soto*, 99 D.P.R. 768 (1971) ; *Pueblo* v. *Maldonado Dipiní*, 96 D.P.R. 897 (1969) ; *Pueblo* v. *Robles Robles*, Cr-71-2, Sentencia de 18 de octubre de 1971; *Pueblo* v. *Salinas Colón*, Cr-67-214, Sentencia de 14 de enero de 1971.

2.—Señala el apelante que incidió el tribunal de instancia al permitir que los abogados del apelante renunciaran, sin el consentimiento expreso o inteligente del apelante, a que el tribunal hiciera un resumen de la prueba.

■ En el caso de *Pueblo* v. *Nazario Nieves*, 100 D.P.R. 232 (1971), consideramos este apuntamiento y concluimos que el referido consentimiento del apelante no es necesario. Nada aduce el apelante en este caso que nos induzca a cambiar de parecer con respecto a este planteamiento.

■ 3.—Arguye el apelante que el tribunal de instancia incidió al no dar al jurado una instrucción "en el sentido de que al considerar el testimonio del niño de siete años de edad Juan Alicea Delgado tomaran en consideración su edad, el hecho de que el niño estuvo todo el tiempo bajo la custodia e

influencia de la abuela materna y cualquier otro factor que pudiera afectar su credibilidad."

No se solicitó oportunamente del tribunal de instancia que diera tal instrucción al jurado. *Pueblo* v. *del Valle*, 91 D.P.R. 174 (1964). La representación legal del apelante no ha hecho en su alegato un análisis concienzudo del testimonio de este niño ni de su contrainterrogatorio demostrativo de la necesidad de tal instrucción. Tampoco nos demuestra qué perjuicio sustancial puede haber sufrido el apelante debido a la ausencia de tal instrucción.

Se limita a indicarnos que hemos resuelto que este tipo de instrucción debe darse en casos de abuso de menores, violación y otros delitos sexuales; que en el caso del niño en cuestión, aunque no se trata de un caso de delitos sexuales, las circunstancias especiales que rodeaban el testimonio de este testigo justificaban que el juez sentenciador le diera una instrucción similar a las que se dan en los casos antes mencionados, a pesar de que no se le solicitó. Véase, *Pueblo* v. *Serrano Olivo*, 93 D.P.R. 745, 746, 747 (1966).

Hemos analizado el testimonio del referido niño y no encontramos que fuera influenciado por su abuela o por otros factores al extremo de requerir la instrucción en cuestión. Por el contrario, encontramos que, aun en el caso de que la instrucción hubiera sido necesaria, su omisión no fue perjudicial ya que se adujo abundante prueba corroborativa a través de otros testigos que oyeron los mismos gritos de la fallecida que el niño dice que oyó.

4.—Alega el apelante que el tribunal sentenciador incidió al no dar instrucciones sobre la prueba de *res gestae* y de declaración en artículo mortis y las diferencias entre ambas, en relación con las declaraciones de los testigos Juan Alicea Delgado, Felícita Miranda y Carmen Núñez, de que oyeron cuando la interfecta gritaba y decía que el acusado la estaba matando.

El apelante no solicitó estas instrucciones oportunamente.

Tampoco cita autoridad alguna en apoyo de este apunta-miento. Se limita a decir que las declaraciones en cuestión no pueden considerarse como parte del *res gestae* o de declara-ciones en artículo mortis de la interfecta y que el juez debió instruir al jurado sobre esto "ya que era necesario que el jurado tuviera algunas directrices claras para determinar la culpabilidad o inocencia del acusado apelante" y que tal omisión "evitó que el jurado entendiera realmente si debían darle o no credibilidad a las manifestaciones de la occisa."

La representación legal del apelante no ha ilustrado a este tribunal adecuadamente con respecto a este apuntamiento.

Las declaraciones sobre los gritos de la interfecta no son admisibles a base del inciso 3 del Art. 397 del Código de Enjuiciamiento Civil, Art. 35(3) de la Ley de Evidencia (32 L.P.R.A. sec. 1678(3) (¹) pues tales declaraciones sólo podrían admitirse al amparo de esta disposición para probar la aquies-cencia o admisión del acusado ante la imputación que le hace la declaración. *People* v. *Ong Mon Foo*, 189 Pac. 690, 692 (Cal. 1920). Véase *People* v. *Lew Fat*, 207 Pac. 881 (Cal. 1922). Es en esta circunstancia que es necesario instruir al jurado sobre el limitado propósito para el cual se admite la evidencia.

■ Los gritos a que se refiere el planteamiento eran los siguientes: "Ay mami, sálvame que Johnny me mata." Tes-tificaron sobre los mismos en el interrogatorio directo los tes-tigos de cargo Juan Alicea Delgado, Felícita Miranda y Car-men Núñez.

El niño testigo Juan Alicea Delgado también testificó que oyó a su madre, la interfecta, proferir esos gritos mientras el testigo observaba desde su cama contigua a la de su madre como su padre la forzó a tomar de un vaso que le

---

(¹) El referido Art. 397(3) dispone que es admisible en evidencia "El acto o declaración de otra persona en presencia y bajo la observación de una parte, y la conducta de ésta, relacionada con dicho acto o declaración." Esta disposición se tomó del Art. 1870 del Código Civil de California el cual ha sido derogado.

empinaba, luego de abrirle la boca, mientras le aguantaba la nariz.

Además, Felícita Miranda, quien es hermana de la interfecta y vive a unos treinta y cinco pies del lugar de los hechos, se despierta al oír los gritos de la occisa y dice "como yo acostumbro dormir con bata, pues enseguida me levanté, abrí la puerta y corrí para la casa de mi hermana." Después de tocar "más o menos quince minutos", el acusado abre la puerta. A preguntas de Felícita Miranda, que es la primera persona que entra al cuarto, la interfecta "gritaba con menos fuerza, él me mató, me envenenó." Bajo estas circunstancias todavía la occisa se encontraba influenciada o bajo los efectos del evento que originó la cadena de hechos, y tales manifestaciones pueden considerarse parte del *res gestae*, a pesar de que surgen ante una pregunta. Véase, Wharton *Criminal Evidence*, 12th ed., vol. 1, sec. 280, pág. 633.

Concluimos que bajo las anteriores circunstancias las declaraciones en cuestión eran admisibles como parte del *res gestae. Pueblo* v. *Dueño Maysonet,* 94 D.P.R. 706, 713 (1967).

■ Por último, en *Pueblo* v. *Crespo,* 21 D.P.R. 300, 309 (1914), dijimos:

"Tal vez si el acusado lo hubiera pedido la corte hubiera dado instrucciones al jurado con respecto a lo que podía considerarse como parte de las *res gestae* en este caso. Por lo demás como sostiene el fiscal, *el determinar si una parte de la prueba constituye o no parte de la res gestae corresponde al tribunal y el jurado tiene derecho a considerar esa parte de la prueba en conjunto con toda la prueba presentada en el caso."* (Énfasis nuestro.)

■ 5.—Apunta el apelante que fue perjudicial a sus derechos el hecho de que las declaraciones que los testigos Juan Alicea Delgado, Felícita Miranda y Carmen Núñez dieron a los investigadores antes del juicio le fueran entregadas a la defensa en presencia del jurado y del juez sentenciador, ya que si la defensa no utilizaba las declaraciones para

impugnar a los testigos, el jurado podía inferir que lo declarado en el juicio era consistente con lo que le había declarado al fiscal durante la investigación. Fundamenta su planteamiento en *Pallota* v. *United States*, 404 F.2d 1035 (1st Cir. 1968); *Gregory* v. *United States*, 369 F.2d 185 (U.S. Ct. of App., D.C. Cir., 1966) y *People* v. *Beard*, 214 N.E.2d 577, 581 (App. Ct. Ill. 1966).

Es por primera vez en apelación que la defensa hace este planteamiento. En ningún momento la defensa solicitó del juez que presidía la vista que el jurado se retirara. No surge tampoco del récord que el jurado estuviera consciente de que el fiscal le hubiera entregado las declaraciones a la defensa.

No se nos ha señalado que en éste ni en ningún otro caso la práctica seguida hasta ahora en esta jurisdicción haya afectado los derechos fundamentales del acusado que vicie de nulidad el juicio.

En cuanto a ésta parte de esta opinión, el ponente expresará sus puntos de vista en un voto explicativo.

■ 6.—El apelante imputa prejuicio y pasión al jurado en la apreciación de la prueba. No analiza la misma con el propósito de sostener este apuntamiento. El apelante se ha limitado a señalar que en vista de las contradicciones de los testigos de cargo, las cuales no especifica, y del hecho de que, en su mayor parte, dichos testigos eran familiares y amigos de la occisa, sus testimonios no merecían el crédito que les dio el jurado.

Hemos examinado los testimonios de los testigos de cargo y no encontramos en el récord fundamento alguno para concluir que el jurado actuó prejuiciadamente o a base de pasión o parcialidad. El veredicto, por el contrario, está ampliamente sostenido por la prueba.

*En vista de lo expuesto, debe confirmarse la sentencia dictada en este caso por el tribunal de instancia, en 28 de noviembre de 1966.*

El Juez Presidente, Señor Negrón Fernández, al igual que los Jueces Asociados, Señores Hernández Matos y Martín, no intervinieron. El Juez Señor Ramírez Bages emitió un voto explicativo.

—O—

Voto explicativo del Juez Asociado Señor Ramírez Bages.

San Juan, Puerto Rico, a 7 de diciembre de 1971

En relación con la solicitud, entrega y uso de las declaraciones de los testigos de cargo en presencia del jurado, cuestión planteada en el quinto apuntamiento considerado en la opinión en este caso, el Tribunal de Apelaciones del Primer Circuito Federal se expresó en *Pallota* v. *United States*, 404 F.2d 1035 (1st Cir. 1968), así:

"Si el abogado defensor, luego de solicitar y examinar la declaración ante el jurado, decide no usarla en el contrainterrogatorio de un testigo, corre el riesgo de que el jurado pueda inferir que la declaración era consistente con el testimonio directo, realizándose indirectamente lo que no podía lograr el ministerio fiscal directamente usando declaraciones consistentes anteriores para corroborar el testimonio de su testigo el cual no ha sido impugnado. Este peligro ha inducido al Circuito del Distrito de Columbia a declarar que constituye un error que requiere la revocación de la sentencia el requerir que las solicitudes y exámenes se hagan en presencia del jurado. *Gregory* v. *United States*, 125 U.S. App. D.C. 140, 369 F.2d 185 (1966). Además, nos damos cuenta de la posibilidad de que el exigir que el abogado defensor lea una larga y detallada declaración por primera vez y decida sobre su utilidad a los fines del contrainterrogatorio, bajo la observación pasmosa de un jurado, puede añadir cargas sicológicas que no son necesarias ni son de ayuda para lograr un juicio justo.

Por otra parte, si declaraciones del tipo a que se refiere la Ley Jencks[1] son usadas en el contrainterogatorio sin indi-

---

[1] Ley Jencks, Pub. L. 85-269, Sept. 2, 1957, 71 Stat. 595; 18 U.S.C. sec. 3500, que incorpora la norma establecida en *Jencks* v. *United States*,

carse como llegaron a manos de la defensa, el ministerio fiscal corre el riesgo de que el jurado pueda inferir que ha ocultado información importante. Véase, *United States* v. *Gardin,* 382 F.2d 601 (2d Cir. 1967)."

Las declaraciones juradas prestadas por los testigos de El Pueblo durante la etapa investigativa del proceso criminal son prueba de referencia y, en consecuencia, inadmisibles en evidencia. No obstante, el acusado tiene derecho a que, después que declare un testigo de El Pueblo se le entregue copia de la declaración que el testigo le dio al ministerio público, o a cualquier otro funcionario investigador para propósitos de impugnar a dicho testigo si existen contradicciones entre el testimonio en corte abierta y el testimonio prestado por el testigo con anterioridad al juicio. *Pueblo* v. *Rivas,* supra.

A mi juicio, en el ejercicio de nuestra función rectora, hemos debido adoptar para casos subsiguientes, y en relación con la solicitud, entrega y uso de declaraciones suscritas por testigos de cargo, la siguiente norma:

El abogado de la defensa puede evitar cualquier posibilidad de que se causen perjuicios a la imparcialidad del procedimiento, como se apunta en *Pallota* v. *United States,* supra, *Gregory* v. *United States,* supra, y *United States* v. *Gardin,* supra. Puede dirigir su solicitud para examinar las referidas declaraciones al juez en ausencia del jurado. A esos efectos, el tribunal de instancia deberá ordenar que se retire el jurado. Nunca se requerirá del abogado de la defensa que haga tal solicitud en presencia del jurado.

En caso de que dicho abogado utilice y presente en evidencia la mencionada declaración para impugnar al testigo, además de las instrucciones que ordinariamente se transmiten sobre el propósito y alcance de esa prueba, debe instruirse al jurado que la investigación fiscal es privada y que, por lo

353 U.S. 657 (1957). Véase, *Pueblo* v. *Rivas,* 83 D.P.R. 386 (1961). Ni la Ley Jencks ni la decisión en *Jencks,* supra, establecen nada en lo que respecta a la cuestión discutida en el caso que nos ocupa.

tanto, el acusado no tiene derecho a examinar las declaraciones juradas de los testigos de cargo, obrantes en el expediente fiscal, hasta tanto el Tribunal lo ordene después que el testigo haya declarado en su interrogatorio directo.