EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>  Apelante<br><br><br><br>  v.<br><br><br>Pablo José Casellas Toro<br><br>  Apelado | <br><br><br><br>2017 TSPR 63<br><br>197 DPR ____ |

Número del Caso: AC-2016-6

Fecha: 25 de abril de 2017

Tribunal de Apelaciones:  Región Judicial de Bayamón.

Oficina del Procurador General:

> Lcdo. Luis Román Negrón
> Procurador General
>
> Lcdo. Isaías Sánchez Báez
> Subprocurador General

Abogados de la Parte Recurrida:

> Lcdo. Arturo Negrón García
> Lcdo. Juan R. Acevedo Cruz
> Lcdo. Harry Padilla Martínez

Materia: Derecho Constitucional y Procedimiento Penal: Reiteración de lo resuelto en Pueblo v. Sánchez Valle, 192 DPR 594 (2015). En los tribunales territoriales de Puerto Rico es válido un veredicto de culpabilidad en el que concurran, como mínimo, nueve miembros del jurado, conforme el Art. II, Sec. 11 de la Constitución de Puerto Rico.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Apelante

       v.                         AC-2016-0006

Pablo José Casellas Toro

     Apelado

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 25 de abril de 2017.

Se nos invita a resolver que luego de la norma establecida en Pueblo v. Sánchez Valle et al., 192 DPR 594 (2015), y confirmada en su totalidad por el Tribunal Supremo Federal en Puerto Rico v. Sánchez Valle, 579 US __, 136 S. Ct. 1863 (2016), los veredictos de culpabilidad que emitan los jurados en las cortes territoriales de Puerto Rico tienen que ser por unanimidad. Sin embargo, toda vez que esa exhortación parte de una lectura errónea de esos casos, rechazamos adoptarla. El requisito de unanimidad en los veredictos condenatorios no es un derecho fundamental reconocido por el Tribunal Supremo federal y como tal, aplicable al territorio

de Puerto Rico. Es por esto que procede revocar el dictamen del Tribunal de Apelaciones en cuanto a este asunto y devolver el caso a ese foro para que evalúe el resto de los señalamientos de error que formuló el apelado. McDonald v. City of Chicago, infra.

I

El Ministerio Público acusó al Sr. Pablo José Casellas Toro por violación del Art. 5.15 (disparo de armas de fuego) de la Ley de Armas, 25 LPRA sec. 458n, y de los Arts. 106 (asesinato en primer grado), 291 (destrucción de prueba) y 273 (presentación de escritos falsos) del Código Penal de 2004, 33 LPRA secs. 4734, 4919 y 4901. Tras varios incidentes procesales, los delitos graves de disparar un arma, asesinato en primer grado y destrucción de prueba se juzgaron por un jurado, mientras que el delito menos grave de presentación de escritos falsos fue ventilado ante un Tribunal de Derecho. Por un lado, el jurado, en votación 11 a 1, encontró culpable al señor Casellas Toro por los delitos graves. Por otro lado, el Tribunal lo declaró culpable por el delito menos grave. Eventualmente, el señor Casellas Toro fue condenado a cumplir un total de 109 años en prisión.

En desacuerdo con esos dictámenes, el señor Casellas Toro recurrió ante el Tribunal de Apelaciones mediante un recurso de apelación. Señaló la comisión de treinta y tres errores. No obstante, el foro apelativo intermedio se limitó a resolver el asunto que hoy tenemos ante nuestra

consideración, es decir, si los veredictos que emiten los jurados en los tribunales de Puerto Rico tienen que ser unánimes. Esto se debió a que el señor Casellas Toro, luego de presentar el recurso de apelación, presentó una moción en la que adujo que en vista de la Opinión de este Tribunal en Pueblo v. Sánchez Valle et al., supra, procedía que se ordenara un nuevo juicio, porque el veredicto que el jurado emitió en su contra no fue unánime y, por eso, según él, era inválido. La Procuradora General se opuso a esa solicitud y señaló que la Opinión de este Tribunal en Pueblo v. Sánchez Valle et al., supra, no tuvo el alcance de extender a Puerto Rico el componente de la unanimidad de la Sexta Enmienda de la Constitución federal, infra.

Luego de evaluar las posturas de ambas partes, el Tribunal de Apelaciones falló a favor del señor Casellas Toro.[1] De acuerdo al foro apelativo intermedio, en la medida en que la decisión en Pueblo v. Sánchez Valle et al., supra, estableció que la Isla no tiene una soberanía separada a la del Gobierno federal, el requisito de unanimidad en los veredictos federales de culpabilidad le aplica al Gobierno de Puerto Rico.

Insatisfecho con esa decisión, la Procuradora General recurrió ante este Tribunal. Arguyó que el Tribunal de Apelaciones erró al interpretar Pueblo v. Sánchez Valle et al., supra, y establecer así una nueva norma constitucional

---

[1] Panel integrado por su presidente, el juez Piñero González, así como las juezas Birriel Cardona y Surén Fuentes. Esta última disintió por escrito.

aplicable a los juicios criminales que se ventilan ante los tribunales de Puerto Rico. Evaluado el recurso como un certiorari, emitimos una Resolución en la que ordenamos al señor Casellas Toro mostrar causa por la cual no debíamos revocar la sentencia del foro apelativo intermedio. Este compareció oportunamente y expuso sus argumentos.

II

A. Durante el Siglo XIX existía un entendido de que los derechos individuales consagrados en la Constitución federal eran extensivos a los territorios propiedad del Gobierno de Estados Unidos. J.J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos: casos y materiales, Bogotá, Ed. Temis, 2009, pág. 410. Véase Thompson v. State of Utah, 170 US 343 (1898), revocado en Collins v. Youngblood, 497 US 37 (1990). Sin embargo, a principios del Siglo XX el Tribunal Supremo federal emitió una serie de decisiones que alteraron esa norma. De esta forma, a través de los llamados casos insulares, se estableció que solo los derechos de la Constitución federal clasificados como fundamentales aplican por su propia fuerza a los territorios no incorporados como Puerto Rico. Downes v. Bidwell, 182 US 244 (1901). Véase, además, J.J. Álvarez González, op cit., pág. 388.

Si bien esa doctrina ha sido criticada fuertemente a través de los años, lo cierto es que continúa vigente al día de hoy, aunque con algunas diferencias de enfoque y

estilo. Pueblo v. Sánchez Valle et al., supra, pág. 626.
Como señaló el Tribunal Supremo de Estados Unidos en
Boumediene v. Bush, 553 US 723, 759 (2008), esa "Corte
diseñó en los casos insulares una doctrina que le permitió
usar su poder con moderación y donde más se necesitara.
Esta doctrina centenaria explica nuestro análisis en este
asunto". ("*the Court devised in the Insular Cases a
doctrine that allowed it to use its power sparingly and
where it would be most needed. This century-old doctrine
informs our analysis in the present matter*")

"[E]n cuanto a los territorios se refiere, la doctrina
de los casos insulares no ha salido intacta de los
constantes ataques constitucionales que sufrió durante el
siglo XX". C. Saavedra Gutiérrez, Incorporación *de jure* o
incorporación *de facto*: dos propuestas para erradicar
fantasmas constitucionales, 80 Rev. Jur. UPR 967, 981
(2011). Después de Boumediene, puede afirmarse que hay
cláusulas de la Constitución federal que cobijan
directamente a los habitantes de los territorios. El
análisis es pragmático, alejado de los fundamentos
dogmáticos de menosprecio racial y cultural que moldearon
los casos insulares de principios del Siglo XX, y liberado
del temor al efecto que cualquier decisión judicial pudiera
tener sobre el territorio de Filipinas, destinado a ser
independiente. Para un estudio de estos factores, véanse,
en general: G.A. Gelpí, Los casos insulares: un estudio
histórico comparativo de Puerto Rico, Hawai'i y las Islas

Filipinas, 45 Rev. Jur. UIPR 215 (2011); J.A. Cabranes, Citizenship and the American Empire, 127 U. Pa. L. Rev. 391 (1978).

B. El señor Casellas Toro argumenta que la norma establecida en Pueblo v. Sánchez Valle et al., supra, alteró lo expuesto en el acápite anterior, de tal forma que ahora no solo las garantías fundamentales de la Constitución federal aplican a Puerto Rico, sino que en el territorio aplican todos los derechos constitucionales oponibles al Gobierno federal. En vista de esos planteamientos, debemos precisar la norma aplicable, a la luz de lo resuelto en Pueblo v. Sánchez Valle et al., supra.

Allí, tuvimos ante nuestra consideración varios acusados que fueron procesados por el Gobierno federal por cometer ciertos delitos relacionados al tráfico ilegal de armas de fuego y, subsiguientemente, el Gobierno de Puerto Rico inició un procedimiento penal contra estos por los mismos delitos. Los acusados plantearon que el Ministerio Público estaba impedido de continuar con ese procedimiento, toda vez que ello implicaba exponerlos a ser castigados en dos ocasiones por la misma ofensa. Por su parte, el Gobierno de Puerto Rico se opuso.

Para resolver esa controversia, hicimos un estudio riguroso de la doctrina federal aplicable. Así, revocamos nuestro precedente en Pueblo v. Castro García, 120 DPR 740 (1988), y resolvimos que "no se puede procesar en los

tribunales de Puerto Rico a una persona que haya sido absuelta, convicta o expuesta a serlo por el mismo delito en los tribunales federales". Pueblo v. Sánchez Valle et al., supra, pág. 598.

En el proceso de llegar a esa conclusión, hicimos un repaso del desarrollo de la protección constitucional contra la doble exposición, así como de la doctrina de soberanía dual, la cual a modo de excepción, le permite a los estados de la Unión y al Gobierno federal, como soberanos distintos, procesar criminalmente a personas por las mismas ofensas. Según expusimos, esa excepción responde al entendido de que en el sistema de gobierno americano, los estados federados y el Gobierno federal son dos entes soberanos separados. Además, analizamos los criterios que elaboró el Tribunal Supremo federal para determinar si otros entes políticos, que no son propiamente estados federados, poseen un grado de soberanía igual a la de estos últimos, de forma tal que les aplique la doctrina de soberanía dual. Según discutimos, lo fundamental para el máximo foro federal es cuál es la fuente última del poder que posee el ente para encausar criminalmente a los que transgreden la ley. Íd.

Con ese marco legal, precisamos que era inescapable resolver que Puerto Rico carece de una soberanía propia y separada a la del Gobierno federal, aunque fue el primer territorio que redactó su propia Constitución para regir los asuntos locales. Íd., pág. 642. Por eso, la autoridad

para procesar los delitos en el Estado Libre Asociado de Puerto Rico proviene, en última instancia, de una delegación de poder del Congreso de Estados Unidos y no de una soberanía propia. Íd. A pesar de que esa delegación fue significativa, Puerto Rico no dejó de "ser un territorio de […] Estados Unidos sujeto al poder del Congreso, según lo dispuesto en la cláusula territorial de la Constitución federal (Art. IV, Sec. 3)". Íd., pág. 644. Por lo tanto, la delegación de poder que hizo el Congreso "no representó una cesión de soberanía a Puerto Rico". Íd. Fue a la luz de esa realidad que concluimos que la autoridad del Gobierno de Puerto Rico para encausar criminalmente a las personas que cometen delitos se ejerce actualmente por autorización y delegación del Congreso federal.

Nuestro razonamiento fue avalado en su totalidad por el Tribunal Supremo federal. Puerto Rico v. Sánchez Valle, supra. En su dictamen, el máximo foro judicial de Estados Unidos enfatizó que por más poder soberano que se delegara al Pueblo de Puerto Rico en 1952, el Congreso no dejó de ser el "delegador" en esa ecuación. Íd., pág. 1876. Esto es así, ya que "el Congreso autorizó y aprobó la Constitución de Puerto Rico, de la cual se deriva su poder acusatorio". (Traducción nuestra)". Íd. ("*Congress authorized and approved [Puerto Rico´s] Constitution, from which prosecutorial power now flows*".) Por consiguiente, ese Foro recalcó que la fuente última del poder de Puerto Rico para procesar criminalmente reside en el Gobierno federal. Esa

conclusión quedó reforzada cuando el Tribunal Supremo federal expresó en su decisión que cuando se busca el origen de la autoridad de Puerto Rico para condenar a los delincuentes "llegamos a las escalinatas del Capitolio de Estados Unidos". (Traducción nuestra). Íd. (*"because when we trace that authority all the way back, we arrive at the doorstep of the US Capitol."*)

Esta frase del Tribunal Supremo federal es reveladora, ya que colocó de manifiesto que el Estado Libre Asociado de Puerto Rico no ostenta soberanía propia sino delegada, entendido ese concepto desde la perspectiva del Derecho político. Dicho de otro modo, Puerto Rico no es un Estado soberano. Si lo fuese, el resultado habría sido distinto en Puerto Rico v. Sánchez Valle, supra, pues "[c]ada Estado soberano debe respetar la independencia de cualquier otro Estado soberano, y los tribunales de un país no pueden juzgar los actos del gobierno de otro país realizados en su propio territorio". (Traducción nuestra). Underhill v. Hernandez, 168 US 250, 252 (1897). ("*Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory.*")

Desde 1900 el Gobierno de Puerto Rico puede aprobar leyes penales y procesar judicialmente a los que las infrinjan. Si algo quedó claro en Puerto Rico v. Sánchez Valle et al., supra, fue que por ello no procedía atribuir

al territorio de Puerto Rico una soberanía propia. Íd., págs. 1875-1876. En ese sentido, el Estado Libre Asociado de Puerto Rico es un ente político autónomo, que ejerce la soberanía del Pueblo solamente sobre aquellos asuntos que no están regidos por la Constitución federal. Puerto Rico v. Sánchez Valle et al., supra, pág. 1874; Rodriguez v. Popular Democratic Party, 457 US 1, 8 (1982); Examining Bd. of Engineers, Architects and Surveyors v. Flores de Otero, 426 US 572, 597 (1976); Calero-Toledo v. Pearson Yacht Leasing Co., 416 US 663, 673-674 (1974); Pueblo v. Sánchez Valle et al., supra, pág. 635. Por eso, las facultades del soberano que ejerce el Pueblo de Puerto Rico para su gobierno interno (Const. P.R., Art. I, Sec. 2), incluyendo la autoridad para procesar a las personas que cometen delitos, provienen de una **delegación** al pueblo del territorio y no de una **cesión** de soberanía. No se trata de una soberanía propia como la que ostentan el gobierno federal, los estados o las tribus nativas americanas. Puerto Rico v. Sánchez Valle et al., supra, págs. 1871-1872.

De esa forma, nuestros pronunciamientos en Pueblo v. Sánchez Valle et al., supra, confirmados por el Tribunal Supremo federal en Puerto Rico v. Sánchez Valle, supra, explicaron los efectos de la realidad política de Puerto Rico en la aplicación de la cláusula que protege contra la doble exposición. Ampliar el alcance de esas decisiones y plantear que estas tuvieron el efecto de colocar el

Gobierno de Puerto Rico dentro del Gobierno federal es una interpretación errónea de ambos casos. El hecho de que el Gobierno de Puerto Rico y el Gobierno federal deriven de la misma fuente su autoridad para entablar procesos penales, no significa que son un solo ente gubernamental, **ni que están sujetos a las mismas reglas al momento de ejercer ese poder**. Tampoco implica que los tribunales de Puerto Rico son un mero anexo de los tribunales federales. Como se dejó claro en Pueblo v. Sánchez Valle et al., supra, mediante la Ley Pública 600 el Congreso delegó al Pueblo de Puerto Rico la autoridad de diseñar un gobierno propio, con un sistema de tribunales separado de los tribunales federales. Véase, Calero-Toledo v. Pearson Yacht Leasing Co., supra, págs. 671-672. Es menester resaltar que nada en estos dictámenes alteró las normas existentes respecto a cuáles de los derechos consagrados en la Constitución federal aplican en Puerto Rico.

Nuestro análisis en Pueblo v. Sánchez Valle et al., supra, según refrendado por el Tribunal Supremo federal en Puerto Rico v. Sánchez Valle, supra, fue claro en puntualizar que la identidad de fuentes y la carencia de soberanía propia no son sinónimo de una ausencia de autoridad, pues esta se deriva de un poder delegado. Cónsono con lo anterior, dejamos claro que conforme con lo resuelto por el Tribunal Supremo Federal en Unites States v. Wheeler, 435 US 313 (1978), existe una diferencia entre, por un lado, auscultar el poder que tiene un ente para

legislar en materia penal o su autoridad para acusar a las personas por infracciones a sus leyes y, por otro lado, analizar cuál es la última fuente de poder de donde las acusaciones provinieron. Pueblo v. Sánchez Valle, supra, págs. 643-644.

Aseverar que es correcta la tesis que propone el peticionario implicaría resolver que somos un territorio de Estados Unidos impedido de tener un ordenamiento propio en materia de derecho penal sustantivo y procesal. Nótese que cada una de esas áreas del Derecho es obra de la Asamblea Legislativa de Puerto Rico y de las decisiones que con carácter vinculante emite esta Curia. Aunque el territorio de Puerto Rico no tiene soberanía propia, sí tiene una autoridad delegada por el Congreso para crear su ordenamiento legal propio en materia de derecho penal sustantivo y criminal.

Aclarado que Pueblo v. Sánchez Valle et al., supra, no alteró las normas constitucionales relacionadas a los juicios por jurado, procede examinar los planteamientos del apelado respecto al requisito de unanimidad en los veredictos que emiten los jurados en Puerto Rico.

III

A. La Constitución federal codifica el derecho a juicio por Jurado en casos criminales en su Sexta Enmienda. Emda. VI, Const. EE.UU., LPRA, Tomo 1 ("*In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district*

*wherein the crime shall have been committed* [...].").
Incluso, a través del proceso de incorporación selectiva,
se reconoció el derecho a juicio por jurado en casos
penales como fundamental. Duncan v. Louisiana, 391 US 145
(1968). Sin embargo, en ese caso el Tribunal Supremo fue
enfático al señalar que la determinación a la que arribaba
no implicaría cambios profusos en los procedimientos
penales de los estados, en lo que respecta a los jurados
configurados por menos de doce personas y al requisito de
la unanimidad para el veredicto condenatorio. Íd., págs.
157-158.

Por otra parte, en Williams v. Florida, 399 US 78
(1970), el Tribunal Supremo de Estados Unidos discutió con
detenimiento la institución del jurado. En ese caso, la
controversia giraba en torno al número de personas que
debía componer dicho cuerpo en el foro estatal. Pertinente
a la controversia que nos ocupa, el Tribunal Supremo
federal realizó un análisis histórico sobre la redacción de
la Sexta Enmienda, y confirmó que el Senado removió del
texto original varias disposiciones ligadas al *common law*,
anterior a la Constitución de 1789, incluyendo el requisito
de unanimidad en el veredicto. Íd., pág. 96.

Así, un estudio riguroso de la jurisprudencia federal
revela que el requisito de la unanimidad no se ha
reconocido como un derecho fundamental aplicable a los
estados o territorios en virtud de la Quinta o la
Decimocuarta Enmienda de la Constitución de Estados Unidos.

Véase, Hawaii v. Mankichi, 190 US 197 (1903) (se validó un veredicto de culpabilidad no unánime de nueve votos a favor y tres en contra, emitido de acuerdo a las leyes del entonces territorio de Hawaii). Véase, también, Apodaca v. Oregon, 406 US 404 (1972) (por pluralidad de votos, se validaron veredictos con diez o más votos emitidos por jurados compuestos por doce miembros); Johnson v. Louisiana, 406 US 356 (1972) (se validaron veredictos con nueve o más votos emitidos por jurados compuestos por doce miembros). Véase, además, E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. II, sec. 15.1(F), págs. 282-285.

En Apodaca v. Oregon, supra, y Johnson v. Louisiana, supra, el Tribunal Supremo de Estados Unidos auscultó la constitucionalidad de varias leyes estatales que permitían rendir veredictos de culpabilidad mediante el voto mayoritario del jurado. Surge de los hechos de estos casos que el estado de Oregon permitía veredictos mayoritarios con diez de doce votos; y el estado de Louisiana permitía veredictos mayoritarios con nueve de doce votos. Conforme a ambos dictámenes, el Tribunal Supremo determinó que el veredicto unánime **no** constituye un requisito para establecer la culpabilidad del acusado más allá de duda razonable, ni para propiciar el derecho a juicio por jurado, como lo establece la Sexta Enmienda de la Constitución de Estados Unidos, supra.

Cónsono con lo anterior, en Johnson v. Louisiana, supra, pág. 359, el Tribunal Supremo federal estableció que nunca ha resuelto que un jurado unánime sea requisito para cumplir con el debido proceso de ley ("*We note at the outset that this Court has never held jury unanimity to be a requisite of due process of law*".). Indicó que, los votos de disenso en un jurado no representan un cuestionamiento sustancial constitucional, sobre la integridad, y la certeza de la mayoría en un veredicto de culpabilidad. Íd., pág. 360. ("*Entirely apart from these cases, however, it is our view that the fact of three dissenting votes to acquit raises no question of constitutional substance about either the integrity or the accuracy of the majority verdict of guilt.*")

El Tribunal Supremo federal concluyó, luego de citar lo resuelto en Allen v. United States, 164 US 492 (1896), que no existe base para denigrar el voto de una mayoría del jurado, o rehusar aceptar su decisión como una carente de duda razonable. Antes bien, es el jurado disidente quien debería considerar si su duda fue razonable, toda vez que no fue capaz de generar la misma impresión en las mentes de tantas personas, igualmente honestas e inteligentes. Johnson v. Louisiana, supra, págs. 361-362.

Por otra parte, en Apodaca v. Oregon, supra, tres acusados fueron hallados culpable mediantes respectivos votos mayoritarios del jurado (11-1, 10-2), por incurrir en agresión mediante un arma, robo domiciliario, y robo

agravado. Los acusados argumentaron que esa votación mayoritaria de culpabilidad violentó su derecho a un juicio por jurado, según reconocido por la Sexta Enmienda de la Constitución. Apoyado en el análisis vertido en Williams v. Florida, supra, el Tribunal Supremo concluyó que al igual que la composición de doce personas en un jurado de lo penal, el veredicto por unanimidad tampoco constituye un requisito de talla constitucional.

De esa forma, el Tribunal Supremo federal no ha reconocido el requisito de la unanimidad en los veredictos de culpabilidad emitidos por un jurado como un derecho fundamental oponible a los estados y territorios. McDonald v. City of Chicago, 561 US 742, 765, esc. 13 (2010) ("*The Court has held that although the Sixth Amendment right to trial by jury requires unanimous verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials*.").

La norma jurisprudencial que se reitera en los casos del Tribunal Supremo federal antes discutidos es clara: el requisito de unanimidad en los veredictos condenatorios **no** es de estirpe constitucional. Esa era la norma en Puerto Rico antes de la aprobación en 1952 de la Ley Pública 600, 64 Stat. 319, y continúa siéndolo al presente. Fournier v. González, 269 F.2d 26, 29 (1er Cir. 1959*). ("If, as we hold, there was no constitutional guaranty of a unanimous jury verdict before 1952, it seems clear, a fortiori, that no such federal right arose in 1952 thereafter*.")

B. Por otro lado, la Constitución de Puerto Rico también consagra el derecho a juicio por jurado en casos criminales en donde se juzguen delitos graves. Específicamente, la Sección 11 del Art. II, Const. PR, LPRA Tomo 1, dispone lo siguiente:

> En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve.[2]

Sin embargo, previo a la aprobación de nuestra Constitución en 1952, la figura del jurado ya estaba instaurada en la Isla. Particularmente, el primer gobierno civil bajo la soberanía americana estableció ese derecho en los casos criminales. Véase, la Ley de 12 de enero de 1901. Si bien en un principio los veredictos que rendían los jurados en virtud de ese estatuto tenían que ser por unanimidad, unos años antes de la aprobación de la Constitución esa disposición se enmendó mediante la Ley Núm. 11 de 19 de agosto de 1948, para autorizar que los veredictos se obtuviesen con la concurrencia de nueve miembros del jurado.

Al elevarse a rango constitucional la garantía de juicio por jurado, los constituyentes decidieron mantener los veredictos con la concurrencia de solo nueve miembros del jurado. El propósito de la Convención Constituyente al

---

[2] Asimismo, la Regla 111 de Procedimiento Criminal, 34 LPRA Ap. II, dispone que los acusados tienen derecho a juicio por jurado en casos de delitos graves y en casos de delitos menos grave siempre que se presente la acusación en una Sala Superior del Tribunal de Primera Instancia.

incluir dicha cláusula fue evitar que se aplicara la equivalencia histórica entre "juicio por jurado" y "juicio por jurado con veredicto unánime". En el debate legislativo sobre la referida medida, el Delegado por Distrito, el Sr. Jaime Benítez, expresó que había el temor de que si no se colocaba expresamente en la Constitución el número de votos necesarios para el veredicto, prevalecería el requisito de unanimidad de los doce jurados. Diario de Sesiones de la Convención Constituyente de Puerto Rico, p. 1589, citado por E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico, Vol. II Ed. Forum (1992), p. 284, esc. 42. Surge del Diario de Sesiones que la Convención Constituyente no quiso dejar en manos de la Asamblea Legislativa la facultad de disponer el número de votos necesarios para el veredicto condenatorio, sin restricción alguna. Véase, Pueblo v. Figueroa Rosa, 112 DPR 154, 160 (1982).

De esa forma, se rechazó la necesidad de requerir unanimidad de los miembros del jurado para llegar a un veredicto de culpabilidad. Por su parte, el Congreso aceptó la propuesta de la Asamblea Constituyente y, contrario a otras disposiciones, no condicionó la aprobación de nuestra Constitución a que se alterara la disposición sobre juicio por jurado. Véase Pueblo v. Sánchez Valle, supra, págs. 630-631. Esta disposición constitucional ha sido cuestionada a través de los años pero **siempre** hemos sostenido su constitucionalidad. Pueblo v. Báez Cintrón, 102 DPR 30 (1974); Pueblo v. Santiago Padilla, 100 DPR 782,

784 (1972); Pueblo v. Batista Maldonado, 100 DPR 936 (1972); Pueblo v. Hernández Soto, 99 DPR 768, 778-779 (1971); Jaca Hernández v. Delgado, 82 DPR 402, 406-409 (1961); Pueblo v. Aponte González, 83 DPR 511, 513-514 (1961); Fournier v. González, 80 DPR 262 (1958).

En fin, no hay duda de que en los tribunales territoriales de Puerto Rico es válido un veredicto de culpabilidad en el que concurran, como mínimo, nueve miembros del jurado.

IV

Como vimos, en Puerto Rico solo son aplicables los derechos fundamentales de la Constitución federal, reconocidos por el Tribunal Supremo de Estados Unidos. Esa es la norma aplicable desde principios del siglo pasado. Lo establecido en Pueblo v. Sánchez Valle et al., supra, y en Puerto Rico v. Sánchez Valle, supra, aunque trascendental, no varió esa norma. E.L. Chiesa Aponte, Derecho procesal penal, 85 Rev. Jur. UPR 477 (2016). Por su parte, el Tribunal Supremo federal ha rechazado reconocer el requisito de la unanimidad en los veredictos que emiten los jurados como un derecho fundamental. McDonald v. City of Chicago, supra. Asimismo, esa exigencia no surge de nuestra Constitución y tampoco se ha estatuido por la Asamblea Legislativa. Por lo tanto, el planteamiento del señor Casellas Toro es incorrecto y carece de una base jurídica que lo sustente.

Por esa razón, el dictamen del Tribunal de Apelaciones que avaló el razonamiento propuesto por el señor Casellas Toro no puede proceder. Según discutido, la validez constitucional de los veredictos por mayoría de nueve o más en nuestros tribunales está firmemente establecida.

V

Por los fundamentos expuestos, revocamos la sentencia del Tribunal de Apelaciones, reinstalamos el dictamen del Tribunal de Primera Instancia y devolvemos el caso al foro apelativo intermedio para que evalúe los demás señalamientos de error que formuló el señor Casellas Toro en su recurso de apelación.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Apelante

      v.              AC-2016-0006

Pablo José Casellas Toro

    Apelado

SENTENCIA

En San Juan, Puerto Rico, a 25 de abril de 2017.

Por los fundamentos expuestos, en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, expedimos el auto de certiorari y revocamos la sentencia del Tribunal de Apelaciones, reinstalamos el dictamen del Tribunal de Primera Instancia y devolvemos el caso al foro apelativo intermedio para que evalúe los demás señalamientos de error que formuló el señor Casellas Toro en su recurso de apelación.

Lo acordó y ordena el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez concurre con opinión escrita a la cual se unió el Juez Asociado señor Colón Pérez. La Juez Asociada señora Rodríguez Rodríguez está inhibida.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Apelante

        v.

                         AC-2016-0006      Apelación

Pablo José Casellas Toro

    Apelado

Opinión concurrente emitida por la Jueza Presidenta Oronoz Rodríguez a la cual se une el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 25 de abril de 2017.

En este caso reiteramos la validez de la Sección 11, Artículo II, de la Constitución de Puerto Rico, la cual reconoce veredictos por mayoría de nueve en juicios por jurado. Art. II, sec. 11, Const. PR, LPRA, Tomo 1. Esto, en vista de que el requisito de unanimidad no constituye un derecho fundamental aplicable a Puerto Rico ni a los estados bajo el debido proceso de ley de la Constitución federal. A su vez, nos permite aclarar que los efectos jurídicos de Pueblo v. Sánchez Valle, 192 DPR 594 (2015), se limitan a la protección contra la doble exposición y, por lo tanto, no inciden sobre la vigencia del resto del andamiaje jurídico y

gubernamental de Puerto Rico.[3]

No obstante, la Opinión mayoritaria emite varias expresiones que a mi juicio sobreestiman lo dicho por el Tribunal Supremo de Estados Unidos en Puerto Rico v. Sánchez Valle, 136 S.Ct. 1863 (2016), razón por la cual me veo obligada a concurrir. Dado que el recuento fáctico y procesal en la Opinión mayoritaria resulta suficiente, me limito a exponer mi apreciación sustantiva sobre el particular.

I

A. El requisito de mayoría en los veredictos de Puerto Rico

La institución del jurado apareció en Puerto Rico a principios del Siglo XX. Específicamente, la Ley Núm. 12 de 19 de agosto de 1901 estableció ese derecho en casos por delitos graves y en algunos menos graves. E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1995, Vol. II, pág. 199. Aunque inicialmente se requirió que el veredicto fuese unánime, en 1948 se enmendó la sección correspondiente del Código de Enjuiciamiento Criminal para estatuir que podía ser por una mayoría de nueve miembros o más.[4] Posteriormente, con la

---

[3] Véase Op. Mayoritaria, pág. 11 (concluyendo que los efectos de Pueblo v. Sánchez Valle, supra, versaron sobre la cláusula de doble exposición y que "[a]mpliar el alcance de esas decisiones y plantear que estas tuvieron el efecto de colocar al Gobierno de Puerto Rico dentro del Gobierno federal es una interpretación errónea").

[4] 34 LPRA sec. 612; véase Ley Núm. 11 de 19 de agosto de 1948. Al respecto, este Tribunal ha dicho: "[p]recisamente, evitar que el aislado proceder de un solo miembro abortara la unanimidad y anulara el esfuerzo y la labor colectiva del panel, fue razón práctica en el cambio a veredictos por mayoría de no menos de nueve". Pueblo v. Figueroa Rosa, 112 DPR 154, 160 (1982).

aprobación de la Constitución de Puerto Rico en 1952 el derecho a juicio por jurado, así como la norma sobre veredictos por mayoría de nueve, adquirió rango constitucional. La Sección 11, Artículo II, supra, dispone:

> En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, *quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve.*[5] (énfasis suplido).

Nuestros constituyentes sabían que en el derecho común anglosajón –donde surgió la institución del jurado– tradicionalmente los veredictos de culpabilidad eran unánimes. Habida cuenta de que el jurado que operaba en Puerto Rico no era el típico jurado del derecho común, decidieron establecer expresamente, para evitar confusión, que los veredictos podían emitirse por mayoría de nueve o más.[6] 3 Diario de Sesiones de la Convención Constituyente 1589 (1952); Pueblo v. Báez Cintrón, 102 DPR 30, 34 (1974).

---

[5] En el Informe de la Comisión de Carta de Derechos, se dijo: El texto fija permanentemente en doce (12) el número de los jurados, respondiendo así a la tradición que ha prevalecido en el país y a la tradición del derecho común. Distinto a esa tradición el veredicto podrá rendirse por la mayoría de votos que determine el poder legislativo, pero no podrá ser menor de nueve (9). Este es el sistema vigente por ley. Entendemos que la fórmula propuesta permitirá a la Legislatura aumentar el margen de mayoría hasta la unanimidad, si lo juzgare conveniente en el futuro. Informe de la Comisión de Carta de Derechos, 21 Rev. Jur. UPR 1, 18 (1951).

[6] Diario de Sesiones de la Convención Constituyente de Puerto Rico, 42do. día de Sesión, pág. 1589.

La jurisprudencia de este Tribunal ha reconocido esta intención y ha validado la constitucionalidad de los veredictos por mayoría reiteradamente. Pueblo v. Batista Maldonado, 100 DPR 936 (1972); Fournier v. González, 80 DPR 262 (1958). Así, ante diversos cuestionamientos al amparo de la Constitución federal hemos dicho que "el veredicto por mayoría cumple y satisface a cabalidad el sentido básico de justicia, juego limpio y debido proceso que satura nuestro método de enjuiciamiento". Pueblo v. Báez Cintrón, 102 DPR 30, 33 (1974).

Al resolver de este modo evaluamos la unanimidad a la luz de la función que cumple el jurado. La conclusión a la que llegamos fue que el derecho fundamental protegido es a que un grupo imparcial de vecinos sirva de contención frente al poder coercitivo del Estado y pase juicio sobre la culpabilidad o no del acusado. Íd., supra, pág. 33. Determinamos que para lograr ese propósito no era imprescindible el veredicto unánime. Desde entonces esta ha sido la norma que ha seguido este Tribunal. Íd., supra, págs. 32-34; Fournier v. González, supra.[7]

B. El requisito de unanimidad en los veredictos federales

_____

[7] En otro caso, este Tribunal expresó:
    [N]uestro jurado –de origen estatutario y ahora constitucional– no es el *common law jury* que opera por unanimidad. Nuestras circunstancias históricas, sociológicas y nuestra relación especial con los Estados Unidos justifican en Puerto Rico el veredicto de un jurado compuesto por doce vecinos y rendido por una mayoría de no menos de nueve. Pueblo v. Hernández Soto, 99 DPR 768, 778-779 (1971).

La cláusula pertinente de la Sexta Enmienda de la Constitución federal, _supra_, dispone que, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been commited". Emda. VI, Const. EE.UU., LPRA, Tomo 1. Aunque la cláusula no menciona que el veredicto debe ser unánime, así se ha interpretado tradicionalmente en las cortes federales.

Temprano en su historia constitucional, el Tribunal Supremo federal resolvió que los derechos contenidos en las primeras ocho Enmiendas de la Constitución limitaban al gobierno federal, mas no a los Estados. Barron v. Mayor and City Council of Baltimore, 32 U.S. (7 Pet.) 243 (1833). Sin embargo, esto empezó a cambiar luego de la aprobación en 1868 de la Decimocuarta Enmienda de la Constitución federal.[8] E. Chemerinsky, Constitutional Law: Principles and Policies, New York, Aspen Publishers, 2006, 3ra. edición, págs. 491-92.

Así, comenzó a plantearse en los tribunales que la cláusula del debido proceso de ley de la Decimocuarta Enmienda, _supra_, -"_nor shall any State deprive any person of life, liberty, or property, without due process of law_"- había extendido a los habitantes de los Estados las protecciones de la Carta de Derechos federal. Aunque al principio estos planteamientos no prosperaron, con el paso del tiempo el Tribunal fue acogiendo e incorporando los

---

[8] Emda XIV, Const. EE.UU., LPRA, Tomo 1.

derechos fundamentales de la Constitución federal a los Estados. Chemerinsky, op. cit., págs. 499-505.

Así sucedió con el derecho a juicio por jurado consagrado en la Sexta Enmienda, supra. En Duncan v. Louisiana, 391 U.S. 145 (1968), el Tribunal Supremo, después de tomar en cuenta el rol del jurado como salvaguarda frente al ejercicio arbitrario del poder y lo arraigado de esa institución en la idiosincrasia popular, concluyó que el jurado es un derecho fundamental que forma parte del debido proceso de ley y aplica en los Estados por medio de la Decimocuarta Enmienda, supra:

> Our conclusion is that in the American States, as in the federal judicial system, a general grant of jury trial for serious offenses is a fundamental right, essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants. Duncan v. Louisiana, supra, pág. 1452.

A consecuencia de esa decisión, poco después ese Tribunal se enfrentó a la controversia medular de este caso, a saber, si el debido proceso de ley requiere que los veredictos sean unánimes. Apodaca v. Oregon, 406 U.S. 404 (1972). En una Opinión de pluralidad, cuatro jueces concluyeron que la unanimidad no es un componente esencial de la cláusula de juicio por jurado que obligue a los tribunales federales o estatales. Íd., págs. 410-11. Por su parte, otros cuatro jueces concluyeron que sí lo era. Ante esto, fue el voto decisivo del Juez Powell el que estableció la norma: si bien el veredicto unánime es un requisito de la Sexta Enmienda, supra, y aplica en la

jurisdicción federal, no es un derecho fundamental cobijado por el debido proceso de ley y extensivo a los Estados. Íd., págs. 371-72 (Powell, J., conc.). De esta manera, una mayoría de jueces resolvió que el veredicto unánime no es un requisito constitucional que obligue a los Estados.

Al resolver, los jueces mayoritarios consideraron que la función del jurado es proteger al acusado, interponiendo entre éste y el Gobierno un grupo imparcial de vecinos encargados de emitir su juicio de sentido común. Íd., págs. 410-11. Concluyeron que para el ejercicio de esta función no es necesaria la unanimidad, pues el propósito se cumple mientras el jurado se componga de un grupo representativo de la comunidad, con el deber y la oportunidad de deliberar libre de coacción. Íd.

Por su parte, el Juez Powell añadió que no todos los elementos asociados al juicio por jurado están incorporados en el concepto del debido proceso de ley. Expresó que el requisito de unanimidad que se observa en la jurisdicción federal se debe a que esa era la costumbre en el derecho común anglosajón al adoptarse la Carta de Derechos, y no porque sea fundamental para el funcionamiento del jurado. Íd., págs. 370-71 (Powell, J., conc.).[9] Así, coincidió en que

---

[9] De forma similar, en Williams v. Florida, 399 U.S. 78 (1970), la controversia era si un jurado compuesto por menos de doce personas era inconstitucional. Después de hacer un análisis histórico sobre el desarrollo del derecho a juicio por jurado, el Tribunal sostuvo la validez de un jurado de seis miembros. Concluyó que la composición de doce miembros era un 'accidente histórico' que provenía del derecho común, innecesario para que el jurado pueda cumplir su propósito. Íd., págs. 102-03.

lo fundamental es la interposición de un grupo de pares con la función de servir como salvaguarda.[10] Por lo tanto, aunque la unanimidad era un componente esencial de la cláusula de juicio por jurado de la Sexta Enmienda, supra, la incorporación de esa cláusula a los Estados a través del debido proceso de ley no incluye como corolario el requisito de unanimidad. Íd. págs. 373-74 (Powell, J., conc.).[11]

II

---

[10] Agregó:

> It is this safeguarding function, preferring the commonsense judgement of a jury as a bulwark 'against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge,' that lies at the core of our dedication to the principles of jury determination of guilt or innocence. This is the fundamental of jury trial that brings it within the mandate of due process. It seems to me that this fundamental is adequately preserved by the jury-verdict provision of the Oregon Constitution. There is no reason to believe, on the basis of experience in Oregon or elsewhere, that a unanimous decision of 12 jurors is more likely to serve the high purpose of jury trial, or is entitled to greater respect in the community, than the same decision joined in by 10 members of a jury of 12. The standard of due process assured by the Oregon Constitution provides a sufficient guarantee that the government will not be permitted to impose its judgment on an accused without first meeting the full burden of its prosecutorial duty. Apodaca v. Oregon, supra, pág. 374 (Powell, J., conc.) (citas omitidas).

[11] Véase también, Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, op. cit., pág. 197. En Johnson v. Louisiana, 406 U.S. 356 (1972), el Tribunal Supremo federal utilizó un análisis similar para validar un veredicto de culpabilidad por mayoría de nueve a tres. Sin ambages, expresó:

> We note at the outset that this Court has never held jury unanimity to be a requisite of due process of law. Indeed, the Court has more than once expressly said that '[i]n criminal cases due process of law is not denied by a state law ... which dispenses with the necessity of a jury of twelve, or unanimity in the verdict. Johnson v. Louisiana, supra, pág. 359 (citas omitidas).

En el caso ante nuestra consideración, el señor Casellas Toro alega que el veredicto mediante el cual fue hallado culpable es inválido porque no fue unánime. Sostiene que la Opinión de este Tribunal en Pueblo v. Sánchez Valle, supra, al resolver que Puerto Rico no tiene soberanía propia, alteró el estado de Derecho vigente sobre la aplicación de las garantías constitucionales federales en Puerto Rico. Argumenta que nuestros tribunales están obligados por la Sexta Enmienda de la Constitución de Estados Unidos, supra, a reconocer únicamente veredictos unánimes. En consecuencia, concluye que la cláusula de la Sección 11, Artículo II de la Constitución de Puerto Rico, supra, es inconstitucional en cuanto permite veredictos por mayoría de nueve.

Ciertamente, para atender esta controversia primero es necesario precisar la norma constitucional establecida en Pueblo v. Sánchez Valle, supra. Aclarado lo anterior, lo concerniente al carácter fundamental del veredicto unánime y su aplicación en Puerto Rico puede atenderse a la luz de la jurisprudencia federal y de nuestros pronunciamientos previos.

La controversia en Pueblo v. Sánchez Valle, supra, era si Puerto Rico se considera un soberano distinto de Estados Unidos para propósitos de la doctrina de soberanía dual en el contexto de la garantía contra la doble exposición. Para contestar esa interrogante, en aquel momento una mayoría de este Tribunal utilizó el criterio adoptado por el Tribunal Supremo federal que consiste en determinar si ambas

entidades derivan su autoridad de la misma fuente última de poder. Para esto, realizó el análisis histórico según la doctrina aplicable en busca de la fuente primigenia del poder acusatorio y determinó que, en última instancia, la autoridad de Puerto Rico para procesar el delito proviene del Congreso de Estados Unidos y no de una fuente primigenia. Pueblo v. Sánchez Valle, supra, pág. 642.

A la luz de ese trasfondo histórico fue que una mayoría de este Tribunal concluyó que la autoridad del Gobierno de Puerto Rico para encausar criminalmente a las personas que cometen delitos emana del Congreso de Estados Unidos. Al no derivar su poder acusatorio de una fuente primigenia, el Gobierno de Puerto Rico está impedido de procesar a una persona por los mismos delitos por los que fue juzgado en la jurisdicción federal.[12] Bajo ese estricto fundamento, el Tribunal Supremo federal confirmó la decisión de este Tribunal en Pueblo v. Sánchez Valle, supra. Véase Puerto Rico v. Sánchez Valle, 579 U.S. ___, 136 S. Ct. 1863 (2016).

Dicho lo anterior, erran los peticionarios al extrapolar esos pronunciamientos del Tribunal Supremo federal y de este Foro para concluir que tuvieron el efecto

---

[12] Véase E.L. Chiesa Aponte, Derecho Procesal Penal, 85 Rev. Jur. UPR 477, 492 (2016). En esa ocasión concurrí, junto a la entonces Jueza Presidenta señora Fiol Matta, con la Opinión que emitió este Tribunal por coincidir en que una persona no debe ser juzgada en nuestros tribunales por un delito por el cual ya fue juzgado a nivel federal. Sin embargo, mi criterio entonces no descansó en la inaplicabilidad de la doctrina de soberanía dual a Puerto Rico, sino en la incompatibilidad de esa doctrina con el derecho a la dignidad humana y la protección contra la doble exposición de la Constitución de Puerto Rico.

de introducir en nuestra jurisdicción el derecho a juicio por jurado con el mismo alcance que en la jurisdicción federal.[13] El caso de Sánchez Valle no alteró la norma establecida por el Tribunal Supremo de Estados Unidos sobre qué derechos de la Constitución federal aplican en Puerto Rico.

Como explica la Opinión mayoritaria, la jurisprudencia más reciente en torno a que el Gobierno de Puerto Rico y el Gobierno federal derivan su autoridad para encausar criminalmente a las personas que cometen delitos de la misma fuente, no implica que estos conformen un mismo ente gubernamental. Es decir, salvo aquellas instancias en las que el derecho federal predomina por cuestión de supremacía, Art. VI, Const. EE. UU., LPRA, Tomo 1, el Gobierno federal y el Gobierno de Puerto Rico siguen siendo entes distintos con sus respectivos andamiajes jurídicos.

Superado ese malentendido, solo procede evaluar si la disposición de la Constitución de Puerto Rico que permite veredictos por mayoría de nueve a tres es inconstitucional a la luz de la Constitución federal.[14] Como vimos, el Tribunal

---

[13] Véase Chiesa Aponte, Derecho Procesal Penal, op. cit., pág. 496 ("Se ha querido inferir demasiado de Sánchez Valle. Se ha invocado su efecto, prospectivo y retroactivo como fundamento para exigir veredictos por unanimidad en casos criminales y hasta derecho a juicio por jurado en casos civiles. Pero esto es una extrapolación indebida. El argumento se basa en que Sánchez Valle resolvió que el Gobierno de Puerto Rico y el Gobierno de los Estados Unidos son el mismo gobierno, la misma soberanía. Pero esto es una premisa falsa. El valor de precedente que pueda tener Sánchez Valle se limita al contexto de la protección constitucional contra la doble exposición; esto es, se trata de un entendido de soberanía limitado al contexto de la doctrina de soberanía dual en el marco de la cláusula constitucional contra la doble exposición en la Quinta Enmienda".).
[14] Véase, e.g., Pueblo v. Collazo Hiraldo, 105 DPR 726 (1977); Pueblo v. Girau, 102 DPR 176; Pueblo v. Báez

Supremo de Estados Unidos resolvió en Apodaca v. Oregon, supra, que la unanimidad no es un derecho fundamental. Lo fundamental, lo que protege el debido proceso, es que el acusado pueda ser juzgado por sus pares y que éstos tengan la oportunidad de deliberar sin coacción alguna. Es decir, el debido proceso de ley no obliga a reconocer la unanimidad como corolario del derecho a juicio por jurado. Íd., págs. 373-74 (Powell, J., conc.).

En lo que a Puerto Rico respecta, no hay duda de que el debido proceso que consagra la Constitución federal nos aplica con idéntica fuerza y extensión que a los estados. Examining Bd. Of Engineers v. Flores de Otero, 426 U.S. 572 (1976).[15] En consecuencia, no siendo la unanimidad un requisito del debido proceso de ley, los veredictos por mayoría como los que permite nuestra Constitución son válidos.

---

Cintrón, supra; Pueblo v. Batista Maldonado, supra; Pueblo v. Hernández Soto, supra; Pueblo v. Aponte González, 83 DPR 511 (1961); Fournier v. González, supra.

[15] Así lo ha dicho expresamente el Tribunal Supremo federal:
  The Court's decisions respecting the rights of the inhabitants of Puerto Rico have been neither unambiguous nor exactly uniform. The nature of this country's relationship to Puerto Rico was vigorously debated within the Court as well as within the Congress. Coude, The Evolution of the Doctrine of Territorial Incorporation, 26 Col.L.Rev. 823 (1926). It is clear now, however, that the protections accorded by either the Due Process Clause of the Fifth Amendment or the Due Process and Equal Protection Clauses of the Fourteenth Amendment apply to residents of Puerto Rico. Examining Bd. of Engineers v. Flores de Otero, supra, págs. 599-600. Véase también Torres v. Com. of Puerto Rico, 442 US 465, 471 (1979); Calero-Toledo v. Pearson Yacht Leasing Co., 416 US 663, 668 n.5 (1974).

La normativa, pues, es clara. Como resolvimos desde Fournier v. González, supra, la Sección 11, Artículo II de la Constitución de Puerto Rico, supra, no adolece de defecto constitucional. Ni los desarrollos del Derecho Constitucional federal ni la decisión de este Tribunal en Pueblo v. Sánchez Valle, supra, alteraron la validez de los veredictos por mayoría de nueve o más. Por consiguiente, concurro con la Opinión mayoritaria en que erró el Tribunal de Apelaciones al anular el veredicto en este caso. Apartarse de los precedentes de este Tribunal lo condujo por un enrevesado camino que lo llevó a invalidar una disposición de la Constitución de Puerto Rico.[16] Hace bien este Tribunal en revocar ese proceder.

Por otro lado, me temo que, al hacerlo, la mayoría de este Tribunal comete un error similar al atribuirle al precedente en cuestión un alcance improcedente. Al igual que en Pueblo v. Sánchez Valle, supra, la Opinión mayoritaria teoriza nuevamente sobre la relación entre Puerto Rico y

---

[16] Es menester reiterar la doctrina del precedente en nuestra jurisdicción, así como en la jurisdicción federal. A esos efectos, debe recordarse que mientras este Tribunal "no revoque o modifique una doctrina establecida en sus decisiones[,] las cortes y organismos inferiores están obligados a seguirla en la resolución de los casos en que sea aplicable". Capestany v. Capestany, 66 DPR 764, 767 (1946); véase Chiesa Aponte, Derecho Procesal Penal, op. cit., pág. 498 ("La Constitución de Puerto Rico y la regla 112 de Procedimiento Criminal se presumen válidas mientras la Corte Suprema de Estados Unidos o el Tribunal Supremo de Puerto Rico no resuelvan lo contrario. El Tribunal de Primera Instancia y el Tribunal de Apelaciones están obligados a seguir los precedentes del Tribunal Supremo que declaran la validez de los veredictos con nueve o mis votos".). Así también, el Tribunal Supremo de Estados Unidos ha expresado lo siguiente: "Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality". Bosse v. Oklahoma, 137 S.Ct. 1, 2 (2016)(citando a Hohn v. United States, 524 U.S. 236, 252-253 (1998))(donde el máximo foro federal revocó a una corte estatal precisamente por interpretar que una norma había sido revocada implícitamente).

Estados Unidos y sugiere que el máximo foro federal confirmó totalmente su razonamiento sobre la carencia de poderes del Gobierno de Puerto Rico. Ello me obliga a aclarar el alcance de lo allí expresado.

De una lectura cuidadosa de la Opinión del Tribunal Supremo de Estados Unidos en Puerto Rico v. Sánchez Valle, supra, surge que ese foro fue puntual al limitar los contornos de su análisis. Específicamente, el Tribunal Supremo de Estados Unidos auscultó la aplicabilidad de la doctrina de soberanía dual al contexto de Puerto Rico, utilizando como criterio rector de esa doctrina el carácter inherente y primigenio del poder punitivo en cuestión desde una perspectiva histórica. Puerto Rico v. Sánchez Valle, supra, pág. 1867 ("To determine whether two prosecuting authorities are different sovereigns for double jeopardy purposes, this Court asks a **narrow, historically focused question**")(énfasis suplido). El foro federal no emitió ni suscribió el estribillo que aduce la mayoría en torno a la carencia de soberanía del Gobierno de Puerto Rico, pues precisamente partió de la premisa de que el grado de autonomía de un ente gubernamental era irrelevante para efectos de la doctrina de soberanía dual.[17]

---

[17] "The inquiry does not turn, as the term 'sovereignty' sometimes suggests, on the degree to which the second entity is autonomous from the first or sets its own political course. Rather, the issue is only whether the prosecutorial powers of the two jurisdictions have independent origins—or, said conversely, whether those powers derive from the same 'ultimate source'". Íd., pág. 1867. "The degree to which an entity exercises self-governance—whether autonomously managing its own affairs or continually submitting to

De hecho, el Tribunal Supremo federal descartó adherirse a una decisión en la que una mayoría de este Tribunal se basó al resolver Pueblo v. Sánchez Valle, supra.[18] Me refiero a Puerto Rico v. Shell Co., 302 U.S. 253 (1937), donde el propio foro federal sostuvo en la década del 30 que Puerto Rico carecía de soberanía propia para efectos de la cláusula de doble exposición. Sin embargo, en Puerto Rico v. Sánchez Valle, supra, ese mismo foro rechazó sentirse vinculado por esa jurisprudencia, precisamente por reconocer que el desarrollo político de Puerto Rico a partir de 1952 ameritaba revisitar la controversia de soberanía dual. Íd., pág. 1874 ("Following 1952, Puerto Rico became a new kind of political entity, still closely associated with the United States but governed in accordance with, and exercising self-rule through, a popularly ratified constitution. The magnitude of that change requires us to consider the dual-sovereignty question anew").

En fin, la mayoría de este Tribunal idealiza al sentenciar que su decisión en Pueblo v. Sánchez Valle, supra, fue confirmada en su totalidad por el Tribunal Supremo de Estados Unidos. Huelga mencionar que el marco jurídico de la relación entre Estados Unidos y Puerto Rico es un tema amplio, complejo y, tomando en cuenta sus

---

outside direction—plays no role in the analysis". Íd., pág. 1870.

[18] Valga mencionar que el Tribunal Supremo federal tampoco aludió a los Casos Insulares, a pesar de que una mayoría de este Tribunal descansó en estos en Pueblo v. Sánchez Valle, supra, págs. 622-27.

aconteceres más recientes, contingente. Una actitud más mesurada en esta secuela cargada de matices políticos debió conducirnos a revocar al foro apelativo intermedio mediante una opinión limitada a la interrogante jurídica ante nuestra consideración. De esa manera, evadíamos pronunciamientos enmarañados y evitábamos atribuirle al máximo foro federal posicionamientos que no ha asumido.

Por todo lo anterior, concurro.


                                Maite D. Oronoz Rodríguez
                                    Jueza Presidenta